The SIERRA CLUB, et al., Plaintiffs,

v.

FEDERAL ELECTION COMMISSION, et al., Defendants.

No. CA 84–2354.

United States District Court, District of Columbia.

August 17, 1984.

H. Richard Mayberry, Jr., Jonathan I. Epstein, Washington, D.C., for plaintiff.

Charles Steele, Richard Bader, Lawrence Noble, Lisa Klein, Washington, D.C., for defendants Federal Election Com'n.

Stephanie Lachman Golden, Dept. of Justice, Washington, D.C., for Dept. of Justice.

## MEMORANDUM

JOHN GARRETT PENN, District Judge.

The plaintiffs seek a declaratory judgment that in accordance with the Federal Election Campaign Act of 1971 (FECA), as amended, 2 U.S.C. § 431 *et seq.*, the Sierra Club Committee on Political Education (SCCOPE) may make in-kind contributions to federal candidates using goods and services purchased at a fair market value from the Sierra Club (Club) with payments made in advance or within a commercially reasonable period of time. This action was filed on July 31, 1984, and on August 2, 1984 the case came before the Court on plaintiffs' motion for a temporary restraining order. The motion was denied. *See* Order filed August 3, 1984. On August 8, 1984, the case came before the Court for a hearing on plaintiffs' motion for a preliminary injunction. After hearing brief arguments by counsel, the Court, pursuant to Fed.R.Civ.P. 65(a)(2), and with the consent of the parties, rescheduled the hearing on the motion for a preliminary injunction combined with a hearing on the merits. Final arguments were heard on August 10, 1984.

The plaintiffs are the Club, SCCOPE, and three directors and officers of those organizations. The defendants are the Federal Election Commission (FEC) and William French Smith, Attorney General of the United States (Attorney General).

### I

The facts are undisputed and are as follows: The Club is a non-profit, voluntary membership organization with the objectives of the preservation and conservation of the environment. SCCOPE is a separate segregated fund established and operated by the Club pursuant to the FECA. *See* 2 U.S.C. § 441b(b)(2)(C). The purpose of

SCCOPE is to permit and encourage members of the Club to participate in electoral politics and, among other things, to promote the election of candidates committed to conservation and environmental protection, consistent with the goals of the Club.

In the 1981–1982 election cycle, SCCOPE conducted an in-kind contribution program on behalf of SCCOPE-endorsed candidates. In doing so, SCCOPE purchased the services of Club personnel and, in connection with the purchase of those services, SCCOPE also purchased the use of Club facilities. On March 9, 1983, the FEC requested further information concerning SCCOPE's purchase of goods and services from the Club. Four written requests were sent to SCCOPE and each one stated that "contributions from corporations are prohibited by the [FECA], unless made through the separate segregated fund of the corporation." Complaint Exhibit B.

On May 4, 1984, SCCOPE and the Club requested an advisory opinion from the FEC concerning SCCOPE's ability to purchase goods and services from the Club. Complaint Exhibit C. The request was made pursuant to the FECA, 2 U.S.C. § 437f, and the regulations promulgated thereunder, 11 C.F.R. §§ 112.1 *et seq.* In their advisory opinion request, SCCOPE and the Club set forth a proposal which included two alternative payment methods which the plaintiffs believed would insure the avoidance of a prohibited corporate contribution under the FECA, 2 U.S.C. § 441b. Under the first proposed method, SCCOPE would pay for goods and services within thirty days after the services had been rendered and the facilities used. Under the second proposed method, SCCOPE would pay for the goods and services in advance by depositing funds in a Club escrow account. The plaintiffs suggested as a third alternative the establishment of SCCOPE as a second employer of Club personnel. They did not, however, raise that method as a specific question in their request and it was not considered by the FEC. *See* 11 C.F.R. § 112.1(b) ("requests presenting a general question of interpretation, or pos-

ing a hypothetical situation ... do not qualify as advisory opinion requests").

On or about the same date that the advisory opinion request was filed, the plaintiffs received notification from the FEC that SCCOPE's purchase of goods and services from the Club during the 1981–1982 election cycle was subject to FEC investigation and that the FEC had found that there was "reason to believe" that the Club's sale of goods and services to SCCOPE constituted a prohibited corporate contribution or expenditure. Complaint Exhibit D. The plaintiffs submitted additional information with respect to their advisory opinion request on June 1, 1984. Complaint Exhibit E.

The FEC issued Advisory Opinion 1984–24 (AO 1984–24) on July 13, 1984, and found that both methods proposed by the plaintiffs would constitute an illegal corporate contribution under 2 U.S.C. § 441b.

Plaintiffs now seek a ruling that Section 441b does not prohibit SCCOPE from making in-kind contributions as set forth in their advisory opinion request, that that section as applied violates the First and Fifth Amendments to the Constitution of the United States, and that AO 1984–24 is contrary to the law and to the First Amendment to the Constitution.

## II

■ It is a general precept of administrative law that a court may review challenges to agency action only when a plaintiff has exhausted his or her administrative remedies. *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938); *National Conservative Political Action Committee v. Federal Election Commission*, 626 F.2d 953, 957, n. 8 (D.C.Cir.1980). The major exception to this rule is, of course, where the plaintiff can demonstrate that further agency consideration would be futile. *Id.;* *American Federation of Government Employees v. Acree*, 475 F.2d 1289, 1292 (D.C.Cir.1973). In this case plaintiffs have not exhausted their administrative reme-

dies and have not demonstrated that resort to administrative channels would be futile.

█ The regulations to the FECA expressly provide that the FEC may reconsider an advisory opinion where the person to whom the opinion was issued submits a written request for reconsideration within thirty calendar days of receipt of the opinion. 11 C.F.R. § 112.6(a). Plaintiffs did not move for reconsideration, choosing instead to file this court action. Thus, unless a request for reconsideration would be futile, it would appear that the plaintiffs have not exhausted their administrative remedies.

Under the facts of this case plaintiffs cannot demonstrate that reconsideration would be futile. Plaintiffs argue that the FEC "misconstrued" their advisory opinion request. *See* Memorandum of Points and Authorities in Support of Plaintiffs' Motions for a Temporary Restraining Order and a Preliminary Injunction. Plaintiffs allege that "[i]n its effort to find a prohibited 'advance', the [FEC] ignored the [Club's] Advisory Opinion Request." *Id.* at 9. They further contend that the FEC "inexplicably misread the [Advisory Opinion] Request". *Id.* at 10. In light of these contentions the Court can hardly conclude that exhaustion would be pointless, or that reconsideration would not result in a different outcome. This is not a case "where it is clear beyond doubt that the relevant administrative agency will not grant the relief in question". *American Federation of Government Employees, supra,* 475 F.2d at 1292 (citations omitted).

█ One of the underlying purposes of the exhaustion doctrine is to promote judicial and administrative efficiency by increasing the possibility that no judicial decision will be necessary, since the complaining party's rights may ultimately be vindicated at the agency level. *See McKart v. United States,* 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969); *Athlone Industries v. Consumer Product Safety Commission,* 707 F.2d 1485, 1488 (D.C.Cir. 1983); *Committee for GI Rights v. Callaway,* 518 F.2d 466, 474 (D.C.Cir.1975). Requiring the plaintiffs to resort to reconsid-

eration before seeking judicial review in this case will further this purpose. Accordingly, the Court holds that, at the very least, plaintiffs must seek reconsideration.

█ A related principle of judicial review with application to the instant case is the doctrine of ripeness: a federal court will not adjudicate issues which are not sufficiently "fit" or ready for judicial decision. *See generally, Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

█ In determining when a case is "fit" for decision, courts have held that where subsequent events or development of the record might place the court in a better position to decide the question, the case may not be ripe. *See Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 300, 99 S.Ct. 2301, 2310, 60 L.Ed.2d 895 (1979); *Duke Power Co. v. Carolina Environmental Study Group,* 438 U.S. 59, 82, 98 S.Ct. 2620, 2635, 57 L.Ed.2d 595 (1978); *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 143–144, 95 S.Ct. 335, 358–359, 42 L.Ed.2d 320 (1974); *Pacific Legal Foundation v. State Energy Resources,* 659 F.2d 903, 915 (9th Cir.1981); *McCoy-Elkhorn Coal v. United States Environmental Protection Agency,* 622 F.2d 260, 264 (6th Cir.1980); *see also National Automatic Laundry and Cleaning Council v. Shultz,* 443 F.2d 689, 695, 698–703 (D.C.Cir.1971) (implying that where the regulatory scheme expressly provides for reconsideration, a case may not be ripe until after reconsideration). Indeed, in *Babbitt,* 442 U.S. at 300, 99 S.Ct. at 2310, the Supreme Court stated that "[e]ven though a challenged statute is *sure* to work the injury alleged ... adjudication might be postponed until 'a better factual record might be available'". (Emphasis this Court's, citation omitted). *See also Rail Reorganization Act Cases,* 419 U.S. at 143, 95 S.Ct. at 358 (1974).

In view of plaintiffs' allegations that the FEC misconstrued their advisory opinion request, the Court cannot say that it would not be in a better position to adjudicate the case after reconsideration. At the very least reconsideration will be helpful in

"identifying [and] refining pertinent facts" involved in the advisory opinion request. *National Automatic Laundry, supra,* 443 F.2d at 695. The possibility of clarification of the facts and a different agency posture upon reconsideration requires the Court to hold that this case is not ripe for review.

### III

For the foregoing reasons, the Court holds that plaintiffs have failed to exhaust their administrative remedies, that resort to the administrative process will not necessarily be futile, and that this case is not ripe for adjudication. Accordingly, the case is dismissed as to both defendants. The Court expresses no opinion as to the merits of plaintiffs' claims or as to any other issue raised by the parties and not addressed in this Memorandum.

An appropriate Order has been filed.*

---

* Due to time constraints the Court has not discussed in detail the relevant law leading it to conclude that plaintiffs have failed to exhaust their administrative remedies and that this case is not ripe for adjudication. Nor has the Court discussed the other arguments made by the parties. The Court has however given careful consideration to all arguments raised by the parties.