626 F.2d 953

**NATIONAL CONSERVATIVE POLITICAL ACTION COMMITTEE, John T. Dolan, Chairman, et al., Appellants,**

v.

**FEDERAL ELECTION COMMISSION et al.**

No. 78–1543.

United States Court of Appeals, District of Columbia Circuit.

Argued May 7, 1979.

Decided March 11, 1980.

---

Paul D. Kamenar, Washington, D. C., with whom Daniel J. Popeo, Washington, D. C., was on brief, for appellants.

Deborah E. McFarland, Washington, D. C., with whom William C. Oldaker, Charles N. Steele and Gary L. Johansen, Washington, D. C., were on brief, for appellee, Federal Election Commission.

Ronald D. Eastman, Washington, D. C., with whom Jeffrey D. Komarow and Mark C. Ellenberg, Washington, D. C., were on brief, for appellee, Democratic National Committee.

Before BAZELON, Senior Circuit Judge, McGOWAN, Circuit Judge, and GESELL *, United States District Judge for the District of Columbia.

Opinion *per curiam.*

PER CURIAM.

## I. BACKGROUND

Appellants[1] challenge the validity of a Federal Election Commission (FEC) regulation and a derivative advisory opinion, as well as the lawfulness of a contribution solicitation proposed by the Democratic National Committee (DNC). The regulation, 11 C.F.R. § 110.1(g)(1),[2] provides that campaign contributions made for the purpose of retiring campaign debts from elections held before January 1, 1975,[3] are not subject to the contribution limitations of the Federal Election Campaign Act. The FEC advisory opinion,[4] A.O. 1978–1, issued in response to a request from the DNC, specifically approved of the DNC's proposed solicitation to retire pre-1975 campaign debts without ref-

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. Appellants include the National Conservative Political Action Committee and its Chairman, John T. Dolan, and the Young Republican National Federation and its Chairman, Roger Stone.

2. 11 C.F.R. § 110.1(g)(1) (1979) provides:
    Contributions made to retire debts resulting from elections held prior to January 1, 1975 are not subject to the limitations of this Part 110 [entitled "Contribution and Expenditure Limitations and Prohibitions"], as long as contributions and solicitations to retire these debts are clearly designated and used for that purpose.

3. As originally enacted in 1972, the Federal Election Campaign Act did not limit the size of contributions that may be made to parties or candidates. The Federal Election Campaign Act Amendments of 1974 introduced limitations, *intra alia*, on the size of campaign contributions. Individuals' contributions to individual candidates were limited, in the aggregate, to $1,000; political committees, other than principal campaign committees, were similarly limited to $5,000; and individuals were limited in their total campaign contributions to $25,000 in any calendar year. *See* Pub.L. No. 93–443, § 101, 88 Stat. 1263 (1974), codified at 18 U.S.C. § 608(b) (Supp. V, 1975). These limitations became effective on January 1, 1975, Pub.L. No. 93–443, § 410(a), 88 Stat. 1304 (1974).

4. The Federal Election Commission is authorized by § 312 of the Act to issue advisory opinions upon request. 2 U.S.C. § 437f (1976). The Act provides that "any person who relies upon any provision or finding of an advisory opinion in accordance with the provisions of paragraph (2) [of § 437f(b)] and who acts in good faith in accordance with the provisions and findings of such advisory opinion shall not, as a result of any such act, be subject to any sanction provided by this Act or by chapter 95 or 96 of Title 26." *Id.* § 437f(b)(1).

erence to contribution limitations imposed by the 1976 amendments to the Act.[5]

Appellants alleged that the Commission's regulation is arbitrary, capricious, and unreasonable; that it violates the equal protection clause of the Fifth Amendment; and that it is contrary to the provisions of section 320 of the Act, 2 U.S.C. § 441a (1976). They also attacked A.O. 1978–1 on the ground that it had not been issued in accordance with the procedures required by the Act and the Commission's own regulations and past practice. The DNC's proposed solicitation was challenged as a violation of the Act. In their prayer for relief, appellants sought declarations of unlawfulness and invalidity as to the regulation and the advisory opinion, as well as injunctive relief against both the Commission and the DNC.

In response to motions by the defendants-appellees[6] to dismiss or, in the alternative, for summary judgment, the district court dismissed appellants' claims against the DNC for failure to exhaust their administrative remedy. It also dismissed appellants' challenge to the Commission's advisory opinion because appellants lack standing and because the issues are not ripe for judicial decision. Finally, the district court held that the regulation itself is consistent with the Act, is reasonable, and was lawfully promulgated.

■ We affirm the district court's decision to uphold the Commission's regulation for the reasons stated in the district court's memorandum.[7] In addition, we affirm the

**5.** *See* Pub.L. No. 94–283, § 112, 90 Stat. 486 (1976).

**6.** Appellees include the Federal Election Commission, its six members, and the Democratic National Committee.

**7.** The district court's rationale, as set out in its unpublished memorandum, is as follows:

At the outset, the Court is mindful that an agency's interpretation of its own enabling legislation is entitled to great weight from the courts. *Udall v. Tallman*, 380 U.S. 1, 16 [85 S.Ct. 792, 801, 13 L.Ed.2d 616] (1965); *National Labor Relations Board v. Bell Aerospace Co.*, 416 U.S. 267, 275 [94 S.Ct. 1757, 1762, 40 L.Ed.2d 134] (1974). Regulation 110.1(g)(1) is the product of a consistent course of decision-making by the FEC,[8] and is deserving of deference from the Court unless clearly repugnant to the provisions of the Federal Election Campaign Act.

Plaintiffs argue that the campaign contribution limitations contained in the Act apply equally to pre-existing and future campaign debts. However, the Court finds nothing in the language of § 441a or in the legislative history of the Act which suggests that the Act's contribution limitations extend to pre-1975 campaign debts. The Court has no basis herein on which to retroactively apply § 441a,[9] and in fact retroactive effect is belied by the express provision of section 410a of Public Law 93–443 that the effective date of the 1974 amendments which added the contribution limitations to the statute, was January 1975.

11 C.F.R. 110.1(g)(1) does not appear contrary to either the specific terms of Federal Election Campaign Act or the Congressional intent underlying the Act.[10]. Nor does the regulation in any way deny equal protection of the laws to persons and entities subject to the contribution limitations provisions of the statute. Finally, the Court finds that the manner in which the regulation was promulgated accords with the requirements of the Administrative Procedure Act.

[8] See AO 1975–5, issued July 25, 1975; AO 1975–6, issued July 25, 1975; FEC Policy Statement, issued July 31, 1975; and AO 1975–52, issued December 11, 1975. The Commission has never waivered from its position that the contribution limitations were inapplicable to pre-1975 debts. Although the Commission originally established a termination date by which pre-1975 debts were to be retired, the Commission abandoned the termination date when it became apparent such a cut-off was unworkable.

[9] See *De Rodulfa v. United States*, 461 F.2d 1240, 1247 (D.C.Cir. 1972); *Claridge Apartments Co. v. Commissioner of Internal Revenue*, 323 U.S. 141, 164, 65 S.Ct. 172, 185, 89 L.Ed. 139 (1944).

[10] Further evidence that the regulation does not work violence to the purposes of the Act is apparent from the fact that the regulation was submitted to the Congress and went unquestioned. See *National Labor Relations Board v. Bell Aerospace Co.*, supra, 416 U.S. at 275, 94 S.Ct. at 1762.

App. 19–20.

dismissal of the action against the DNC, again for the reasons stated in the district court's memorandum. Appellants have failed to demonstrate that exhaustion of their administrative remedy would be "no more than 'an exercise in futility,'" or that "it is clear beyond doubt that the relevant administrative agency will not grant the relief in question," *American Federation of Government Employees v. Acree*, 475 F.2d 1289, 1292 (D.C.Cir. 1973), *quoting Lodge 1858, American Federation of Government Employees v. Paine*, 436 F.2d 882, 896 (D.C. Cir. 1970). In particular, the Commission asserts—and appellants do not deny—that the Commission received no comments on either the proposed regulation or the advisory opinion request. Thus, the first time the Commission was confronted with appellants' objections to the Commission's regulation was in the district court.[8]

We disagree, however, with the district court's conclusion that appellants lack standing to challenge A.O. 1978–1 and that the issues raised in that context are not ripe for judicial decision. Accordingly, we reach the merits of appellants' challenge to the advisory opinion and hold that the Commission did not afford interested parties an adequate opportunity to comment on the advisory opinion before its issuance.

## II. ADVISORY OPINION 1978–1

### A. *Standing*

Appellants attack the Commission's advisory opinion as unlawfully issued[9] and as "arbitrary, capricious, unreasonable, and contrary to law."[10] From the district court's memorandum it appears that the court considered only appellants' standing to raise the substantive challenges to A.O. 1978–1. Without considering separately appellants' standing to raise the procedural issue, the court dismissed as to both the procedural and substantive issues raised in the complaint.

■ Appellants clearly have standing to challenge the lawfulness of the procedures by which the Commission issued its advisory opinion. The Act and the Commission's own regulations provide that interested persons must be given an opportunity to comment upon the Commission's proposed advisory opinions. A plaintiff need only allege that it was denied that opportunity and that, had the opportunity been made available, it would have commented upon the opinion. Because appellants' complaint contains both allegations, they have stand-

---

**8.** Following the district court's dismissal of the action against the DNC for failure to exhaust available administrative remedies, appellants filed a complaint with the Federal Election Commission in an apparent effort to comply with the district court's holding. The Commission held on December 8, 1978, that it could find no reason to believe that the DNC had violated the Act. The Commission's action constitutes a dismissal of the complaint, a course that was necessitated by appellants' failure to provide the Commission with any information, documentation, or even legal theories to support the complaint, as the Commission had requested they do. Appellants' failure to prosecute their administrative action completely undercuts their argument that they have exhausted their administrative remedies. The purpose of the exhaustion doctrine is to afford the administrative agencies an opportunity to perform functions that are within their special competence, including the correction of their own errors. *See, e. g., Parisi v. Davidson*, 405 U.S. 34, 37–38, 92 S.Ct. 815, 818, 31

L.Ed.2d 17 (1972). That the Commission requested further information and legal arguments from the DNC after the DNC filed its administrative complaint demonstrates that exhaustion would not have been a futile exercise. This case gives currency to the rule that the doctrine of exhaustion cannot be satisfied by less than a good-faith effort to achieve the purposes the doctrine was designed to accomplish. As the word "exhaustion" implies, the administrative remedy must be effectively pursued to finality before the courts will attempt a resolution of the dispute. *Douglas v. Hampton*, 512 F.2d 976 (D.C.Cir. 1975).

**9.** Complaint ¶ s 25, *V.C.*, Appendix (App.) 11, 12.

**10.** Complaint ¶ s 25, *V.D.*, App. 11, 12.

ing to challenge the advisory opinion on procedural grounds. *See Committee for Full Employment v. Blumenthal*, 606 F.2d 1062, 1065 & n.11 (D.C.Cir. 1979).

### B. *Ripeness*

■ We also disagree with the district court's conclusion that the Commission's action in issuing A.O. 1978–1 is not ripe for judicial review. First, the DNC has accrued all of the pre-1975 campaign debts that it will ever accrue. The Commission has issued a regulation regarding the status of those campaign debts with respect to post-1975 limitations on campaign contributions. Finally, the DNC has sought and received from the Commission an advisory opinion that specifically passes upon the legality of the DNC's proposed solicitation of contributions in excess of current limitations on contributions. Unlike the situation presented by *New York Stock Exchange v. Bloom*, 562 F.2d 736 (D.C.Cir. 1977), *cert. denied sub nom. New York Stock Exchange v. Heimann*, 435 U.S. 942, 98 S.Ct. 1520, 55 L.Ed.2d 538 (1978), relied upon by the district court, the Commission did not reserve the possibility that it might reach a contrary position on the basis of as yet unknown or undisclosed facts. Here, the Commission did not resolve a merely abstract question. Instead, the Commission passed upon the legality of a concrete solicitation proposed in some detail by the DNC.

Similarly, the district court cannot support its ripeness conclusion by relying on the case of *Clark v. Valeo*, 559 F.2d 642 (D.C.Cir.), *aff'd sub nom. Clark v: Kimmit*,

431 U.S. 950, 97 S.Ct. 2667, 53 L.Ed.2d 267 (1977). Plaintiff Clark's status as a noncandidate obviated any present, personal stake in Congress' procedures for passing upon the Commission's rules, regulations, and advisory opinions. In contrast, here the DNC's campaign debts have accumulated and are fixed, its solicitation has been proposed, and the legality of that solicitation has been passed upon by the Commission. The stage is set for the solicitation itself, and nothing in the record suggests that any intervening events have occurred to render the Commission's action less final than it was when taken.

### C. *Notice and Comment*

■ We find that appellants are entitled to prevail in their objections to the Commission's failure to publish notice of their receipt of the DNC's request for an advisory opinion.[11] Section 312(c) of the Act requires that "[a]ny request [for an advisory opinion] shall be made public by the Commission." 2 U.S.C. § 437f(c) (1976). The Commission's own regulation repeats this command, *see* 11 C.F.R. § 112.2(a) (1979), with the addition of the requirements that the request shall *promptly* be made available *at the Commission*. Although neither the Act[12] nor the Commission's regulation requires actual publication of advisory opinion requests, until January 1978 the Commission's practice had been to publish such requests in the *Federal Register*.

■ In 1978, the Commission announced that advisory opinion requests would be published in its monthly newslet-

---

11. The record offers this court an adequate basis upon which to render judgment as to appellant's claims in this part of their case, and a review of this record convinces us that the proper resolution of these issues is free from doubt. In the interest of judicial economy, we will render final judgment with respect to appellants' procedural claim, rather than remand the case for further consideration by the district court. *See, e. g., Levin v. Mississippi River Fuel Corp.*, 386 U.S. 162, 169–70, 87 S.Ct. 927, 932, 17 L.Ed.2d 834 (1967).

12. Section 312(c) of the Act merely provides that "[a]ny request made under subsection (a) of this section shall be made public by the Commission." 2 U.S.C. § 437f(c) (1976). Con-

gress often requires that the various agencies' findings, classifications, and other work product "be made public," *e. g.,* 21 U.S.C.A. § 360d(g) (Supp.1979); 30 U.S.C. § 811 (1976); 42 *id.* § 7609, and in no such instance have the agencies been required to publish in the *Federal Register* or elsewhere. When publication in the *Federal Register* was intended, Congress specifically said so. *E. g.,* 5 U.S.C. § 552(a) (1976); 15 *id.* § 636. This result is consistent with the Administrative Procedure Act, which exempts "interpretive rules" from, *inter alia*, its requirement that "[g]eneral notice of proposed rule making shall be published in the Federal Register." 5 U.S.C. § 553(b) (1976).

ter and not in the *Federal Register.* The Commission, however, failed to publish notice of the DNC's request in either publication. Thus, appellants, who justifiably relied upon the Commission's practice of publishing requests, were effectively denied the opportunity to comment upon the DNC's request during the comment period provided for by the Act [13] and by the Commission's own regulations.[14] Agencies are under an obligation to follow their own regulations, procedures, and precedents, or provide a rational explanation for their departures. *See Vitarelli v. Seaton,* 359 U.S. 535, 546–47, 79 S.Ct. 968, 976, 3 L.Ed.2d 1012 (1959) (Frankfurter, Clark, Whittaker & Stewart, JJ., concurring and dissenting in part); *cf. Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 852 (D.C.Cir. 1970), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971). In addition, prior notice is required where a private party justifiably relies upon an agency's past practice and is substantially affected by a change in that practice. *Independent Broker-Dealers' Trade Association v. SEC,* 442 F.2d 132 (D.C.Cir.), *cert. denied,* 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed.2d 57 (1971). Thus, Congress' mandate, the Commission's regulations, and considerations of fundamental fairness lead us to conclude that A.O. 1978–1 was unlawfully issued and is without force and effect.

### III. SUMMARY

We affirm two aspects of the district court's judgment: (1) the dismissal of the action against the Democratic National Committee and (2) the grant of partial summary judgment in favor of the Federal Election Commission on the issue of the validity of 11 C.F.R. § 110.1(g)(1). Contrary to the holding of the district court,

however, we hold that appellants have standing to challenge the advisory opinion on procedural grounds and that the procedural issues raised by appellants are ripe for decision. We further hold that the Commission's failure to give notice of the DNC's advisory opinion request constitutes an effective denial of appellants' right to comment upon the advisory opinion, a right afforded by the Commission's own regulations. We find that the Commission's failure is fatal to the validity of A.O. 1978–1. The district court's judgment is modified consistent with this opinion, and, as modified, is affirmed.

*So ordered.*

---

**13.** Section 312(c) of the Act provides in pertinent part: "The Commission shall, before rendering an advisory opinion with respect to such request, provide any interested party with an opportunity to transmit written comments to the Commission with respect to such request." 2 U.S.C. § 437f(c) (1976).

**14.** 11 C.F.R. § 112.3 (1979) provides in pertinent part:

(a) Interested persons are invited to submit written comments concerning advisory opinion requests.

(b) Written comments may be submitted within 10 calendar days of the date the request is made public at the Commission. The Commission may in its discretion shorten or extend the comment period on a particular request where there is reasonable cause for doing so.