**George Robert P. FARQUHAR, Plaintiff,**

v.

**FOOD AND DRUG ADMINISTRATION, Defendant.**

**Civ. A. No. 84–1021.**

United States District Court, District of Columbia.

June 13, 1985.

George Robert P. Farquhar, pro se.

Edith Marshall, Washington, D.C., for defendant.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

Plaintiff, *pro se*, has applied to this Court for relief from economic injuries allegedly caused by the actions of the defendant, Food and Drug Administration (FDA). It appears that Mr. Farquhar has developed a topical antimicrobial product for use on intact skin [1] that he believes to be a safe and effective product for certain uses such as a surgical scrub. Mr. Farquhar's complaint arises from what he believes to be the unfair treatment he received at the hands of the FDA. To understand the issues at hand in the cross-motions for summary judgment presently before the Court it is necessary to examine Mr. Farquhar's administrative actions in light of the procedural requirements of the FDA.

## I.  INTRODUCTION

On April 3, 1983 plaintiff submitted a citizen's petition to the FDA requesting that the agency "reopen" the rulemaking record for over-the-counter (OTC) topical antimicrobial drugs in order that the defendant might grant "approval" of the combination of ingredients in plaintiff's newly developed product. *See* 21 C.F.R. § 10.30. Because of the "undue delay" in receiving a response, plaintiff filed the original complaint asking this Court to compel the FDA to act. A short time later, in July, 1984, the FDA denied plaintiff's petition, explaining that because plaintiff's compound was a "new drug" it could not

---

**1.** Otherwise known to non-scientists as a soap or cleanser.

appropriately be considered in the ongoing OTC antimicrobial product review.[2]

Plaintiff subsequently amended his complaint several times, without objection from the defendant, to revise his claims against the FDA. While plaintiff has not been precise in his allegations of error, the Court has construed the amended complaints as set forth below in an effort to fit Mr. Farquhar's allegations within the recognized form of actions against a federal agency.[3]

Mr. Farquhar's arguments in the pleadings before this Court are largely scientific in nature; that is, his memoranda and attachments focus for the most part on proving that his drug is "safe and effective" and that the FDA erred in not granting approval for its OTC sale. Plaintiff has phrased his argument in various ways. In essence, it is either a claim for review of the administrative action in denying the reopening of the rulemaking procedure or a request for a declaratory judgment that the agency erred in not finding plaintiff's product to be safe and effective and appropriate for the indicated uses.

## II. THE OTC RULEMAKING

The rulemaking which plaintiff sought to have reopened is part of the FDA's ongoing retrospective review of approved OTC drugs. *See Cutler v. Kennedy,* 475 F.Supp. 838, 843 (D.D.C.1979). Unfortunately, it is *not* the procedure that plaintiff should have followed in order to have his "new drug" approved. In short, the FDA correctly denied plaintiff's petition on the ground that the product in question was a "new drug" for which an approved new

drug application must be filed. 21 U.S.C. § 321(p); 21 U.S.C. § 355.

The Federal Food, Drug & Cosmetic Act defines a "new drug" as a drug that has either: 1) not been generally recognized by qualified experts as safe and effective "for use under the conditions prescribed, recommended, or suggested in the labeling thereof," or 2) not been used to a "material extent for a material time" under such conditions. 21 U.S.C. § 321(p).

■ In the case of plaintiff's product, neither the individual chemical ingredients nor the combination had ever been marketed for uses for which plaintiff proposed.[4] Letter from William Randolph, Acting Assoc. Commissioner for Regulatory Affairs to George Farquhar (July 27, 1984). Thus, even if plaintiff's product is in fact as safe and effective as plaintiff claims, the absence of marketing data ("to a material extent for a material time") required the FDA to treat plaintiff's product as a "new drug." Plaintiff's attempt to have his product included in the OTC review was therefore inappropriate, and the FDA was justified in requiring plaintiff to proceed through a new drug application. *See United States v. Articles of Drug ... Hormonin,* 498 F.Supp. 424, 430–31 (D.N.J.1980).

## III. THE NEW DRUG APPLICATION

In what the Court must assume was a strategic response to defendant's position as set forth above, plaintiff has repeatedly amended his complaint in an effort to avoid the conclusion that his product requires new drug licensing. In its latest (fourth) incarnation, plaintiff seeks a declaratory judgment that his product is not a "new drug" when used as a *sanitizing agent for food handlers.*[5]

---

**2.** This action by the FDA rendered plaintiff's complaint moot to the extent it sought to compel FDA action on his petition.

**3.** The Court has endeavored to give plaintiff's pleadings every benefit of the doubt, as is justified for a *pro se* litigant. *See Boag v. MacDougall,* 454 U.S. 364, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982); *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). In doing so, it is sometimes necessary to read plaintiff's legal arguments quite liberally in order to discern what

appears to be the "best" argument within the scope of the available legal doctrines.

**4.** Plaintiff's original proposed uses included *health care personnel handwashes, preoperative skin preparation, skin antiseptic,* and *surgical hand scrubs.*

**5.** This was not among the uses or indications originally set forth by plaintiff, *see supra* note 4.

In an early pleading, the FDA conceded that "plaintiff's combination product had been marketed as a hand sanitizer for food handlers." Defendant's Memorandum in Opposition to plaintiff's Motion for Summary Judgment at 6. Of course, the question of whether a drug has been "marketed" is not the same as the question of whether it is or is not a new drug. *See, e.g., Tyler Phamacal Distributors, Inc. v. United States,* 408 F.2d 95 (7th Cir.1969). In order to make this "new drug" determination, the Court is required to find and enter a judgment to the effect that plaintiff's compound of myristalkonium chldoride and quaternium 14 is "safe and effective" and that it has been used to a material extent for a material time. *See Weinberger v. Hynson, Westcott & Dunning, Inc.,* 412 U.S. 609, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973).

This is not a question for the judiciary to properly consider in the first instance. The FDA has the established procedures and expertise as well as the statutory authority to make this difficult determination. Judicial review will of course be available at a later time, but plaintiff must first exhaust his administrative remedies.[6] *Parisi v. Davidson,* 405 U.S. 34, 37, 92 S.Ct. 815, 817, 31 L.Ed.2d 17 (1972); *National Conservative Political Action Committee v. FEC,* 626 F.2d 953, 957 (D.C. Cir.1980); *Hoffman-LaRoche, Inc. v. Harris,* 484 F.Supp. 58 (D.D.C.1979). Exhaustion of administrative remedies requires more (and better directed) effort before the agency than plaintiff has attempted to date. Exhaustion implies a good faith effort to "effectively pursue" one's goals in the administrative arena. *See NICPAC,* 626 F.2d at 957 n. 8. This includes pursuing those goals through the proper channels—especially when plaintiff is made aware of the need to follow the proper regulatory scheme. *See supra* note 6.

The Court finds no error in the FDA's denial of Mr. Farquhar's petition[7] and will on the grounds set forth above grant summary judgment for the defendant. However, because plaintiff has pursued other issues in this litigation so vigorously, the Court will briefly set forth its reasoning in these areas.

## IV. PLAINTIFF'S OTHER ARGUMENTS

Mr. Farquhar has claimed violation of two constitutional rights: the fifth amendment right to equal protection and the protections of the takings clause. With respect to equal protection, Mr. Farquhar has not pled the essential element of unequal government treatment of *similarly situated* persons. *See Reynolds v. Sims,* 377 U.S. 533, 565, 84 S.Ct. 1362, 1383, 12 L.Ed.2d 506 (1969). Contrary to the allegations of the complaint, plaintiff is simply not "similarly situated" to those persons whose products were included in the OTC review rulemaking, *see supra* page 192, and thus his exclusion from that process does not state a claim for denial of equal protection.[8]

With respect to the "takings" claim (for 45 million dollars) the Court is uncertain what property the plaintiff believes has been taken, other than potential future earnings from sale of his product. In any event this claim is not properly before this Court. Statutes such as 42 U.S.C. § 1983 and 1985 and other civil rights statutes cited by the plaintiff are an appropriate basis for jurisdiction only when the *states* (not the federal government) are defendants. Similarly, the Administrative Procedure Act—which provides jurisdiction for the Court to review agency action—does not provide a jurisdictional basis for money damage claims. *See Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

---

**6.** The procedures for doing so are known to plaintiff and, in fact, the FDA's denial of plaintiff's original petition directs plaintiff to the appropriate authorities to begin the procedure.

**7.** *See* 5 U.S.C. § 706(2).

**8.** Plaintiff has also failed to allege any invidious basis for this perceived discrimination.

The Federal Tort Claims Act specifically excludes claims for money damages based on an "act or omission" of a Government agency or employee "in the execution of a statute or regulation...." 28 U.S.C. 2680(a); see Dalehite v. United States, 346 U.S. 15, 36, 73 S.Ct. 956, 968, 97 L.Ed. 1427 (1953). Under the Tucker Act, jurisdiction of the district courts in civil actions "founded either upon the Constitution, or any Act of Congress or any regulation ..." is limited to damage claims of under ten thousand dollars ($10,000). 28 U.S.C. § 1346(a)(2). Compare 28 U.S.C. § 1491. In short, despite plaintiff's arguments to the contrary, the Court has no jurisdiction over plaintiff's claim for money damages.

Finally, plaintiff has requested that this Court compel FDA to reconsider its approval of certain products. However, the action which plaintiff seeks to compel has already been underway for some time. The FDA process of reviewing certain OTC drugs (with approved NDA's) dates back at least to the 1972 opinion of Judge Bryant in American Public Health Association v. Veneman, 349 F.Supp. 1311 (D.D.C.1972). Under the terms of the Veneman order (dated October 11, 1972), the FDA was ordered to "proceed expeditiously ... to complete implementation of the drug effectiveness review ... as soon as possible." Judge Bryant retains jurisdiction to enforce or modify any aspect of that order which, according to defendant, still requires ongoing effort by the FDA. This Court will not interfere with that ongoing administrative proceeding.

Plaintiff's request for injunctive relief is based on a misunderstanding of a case on which he places great reliance, Cutler v. Kennedy, 475 F.Supp. 838 (D.D.C.1979). Cutler held that the FDA could not allow continued marketing of entire categories of OTC drugs that the agency determined were lacking in sufficient data to classify as generally recognized as safe and effective. The drugs in question in Cutler had been categorized, after review, as lacking substantial evidence of effectiveness. Id. at 853. The court reasoned that absent such a determination of safety and effectiveness, the regulation allowing marketing of such a category of drugs was "unlawful." Id. at 855.

Although Cutler held that the regulation in question was unlawful, the court did not "agree with plaintiffs that the Commission must move to take such drugs off the market." Id. at 856. Instead, the court held that the agency would retain its traditional prosecutorial discretion "to seek enforcement actions or not to seek enforcement action" against individual OTC drugs. Id. at 856. Thus contrary to plaintiff's assertions, Cutler does not mandate the injunction which he requests. On the contrary, the Cutler case defers to agency expertise in determining which OTC drugs may remain on the market.[9]

The Court has made an effort in this case to discuss—at least briefly—all of the allegations and arguments in plaintiff's motions and memoranda. It has done so in the hope that plaintiff will better understand some of the difficulty and complexity that he must face in the course of his pro se litigation crusade.[10] This is not to suggest that plaintiff has undertaken this or any other case for the purpose of harassment or other improper motive; on the contrary, plaintiff has been quite civil in his demeanor and has undertaken what the Court perceives to be a good faith effort to meet the government's arguments.

However, one cannot help regretting the time and money invested by all parties in

9. Cutler is also inapposite to the present claim because the Cutler case deals with drugs that have been reviewed and classified, not drugs—such as those in the present case—which are undergoing FDA review or the new drug application process.

10. This is not plaintiff's first case before this Court, see Farquhar v. GSA, C.A. No. 83–3111, nor is it his last. A recently filed complaint seeks injunctive relief requiring the GSA to investigate alleged fraud and misrepresentation in the purchase of disinfectant cleaners by the United States Government. Farquhar v. Ink, C.A. No. 85–0859.

this unnecessary litigation. It is especially troublesome because plaintiff could easily have pursued the proper FDA procedures to obtain a new drug application when the agency originally brought the problem to his attention. In fact, the FDA even provided plaintiff with the information necessary to file the proper application, including the address and telephone number of a local FDA official who could assist plaintiff.

Rather than pursuing the proper administrative course, which might have fulfilled plaintiff's original goals, plaintiff launched this lengthy and expensive federal litigation. As so often happens, plaintiff's lawsuit has brought him nothing but an extra year's delay in obtaining the license—the denial of which he claims cost him forty-five million dollars in lost profits.

The Court is not in the habit of challenging the sincerity or motivation of the litigants that appear in this courthouse and the parties may be assured that this is not the purpose of this discussion. Nor does the Court intend to impugn the character of the plaintiff or challenge the strength of his convictions. Instead, the Court offers these observations in the hope that plaintiff—and others—who rush to the courthouse at the first hint of any perceived injustice might temper their enthusiasm for litigation with a careful reflection on how their cause, and the cause of justice, will best be served.

An appropriate order will issue in accordance with the terms of this opinion.