**Robert C. McGARRY, et al., Appellants,**

v.

**SECRETARY OF THE TREASURY, et al., Appellees.**

**No. 87–5087.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 1, 1988.

Decided Aug. 12, 1988.

David R. Levin, with whom Gerald M. Feder and Edgar N. James, Washington, D.C., were on the brief, for appellants.

Robert S. Pomerance, Atty. Dept. of Justice, with whom Joseph diGenova, U.S. Atty.,* Gary R. Allen and Thomas R. Lamons, Attys., Dept. of Justice, Washington, D.C., were on the brief, for appellees Secretary of Treasury and the C.I.R. Michael L. Paup, Washington, D.C., entered an appearance for appellees Secretary of Treasury and C.I.R.

Jean Marie Breen, with whom Gary M. Ford and Robert L. Furst, Washington, D.C., were on the brief, for appellee Pension Benefit Guar. Corp.

Before MIKVA, RUTH BADER GINSBURG and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

A 1986 amendment to the Employee Retirement Income Security Act ("ERISA") provides that when an employer applies to the Internal Revenue Service ("IRS") for a waiver of the pension plan minimum funding requirements set forth in the statute, it must give notice of the waiver application to the union representing the plan participants, and the IRS must consider any relevant information and views provided by the union in evaluating the waiver application. On September 15, 1986, Eastern Air Lines ("Eastern") applied for a waiver of the minimum funding requirements, giving notice of that fact to the International Association of Machinists, District Lodge 100 ("IAM" or "the union"), the union representing the plan participants. Upon receiving notice that Eastern had applied for a waiver, the union asked the IRS to send it a copy of the waiver application to allow it to provide more meaningful commentary. The IRS approved Eastern's waiver request without sending the union a copy of the application.

---

* At time brief was filed.

Appellants—the union and two individuals who are both trustees and beneficiaries of the plan—brought an action in district court seeking an injunction requiring the IRS to withdraw the waiver it granted to Eastern and to begin the process again. The union contended that prior to this reconsideration it was entitled to access to the waiver application in order for it to offer meaningful commentary to the IRS. The district court granted appellee's motion to dismiss, holding that the appellants lacked standing to sue, and alternatively that the allegations failed to state a claim upon which relief could be granted. We reverse the district court's decision on standing, but affirm its dismissal of the suit on the merits.

## I. BACKGROUND

The Eastern Air Lines Fixed Benefit Retirement Income Plan for IAM Mechanics and Related Employees ("the Plan") is an ERISA pension plan maintained pursuant to a collective bargaining agreement between Eastern and IAM, which represents the Plan participants. ERISA requires, among other statutory conditions, that Eastern make annual contributions to the Plan sufficient to satisfy the minimum funding standards set forth in the Act. *See* 29 U.S.C. § 1082. Pursuant to these standards, Eastern was required to make a contribution to the fund of approximately $16 million on September 15, 1986. On that date, instead of making the payment, Eastern applied to the IRS for a waiver of the minimum funding requirement. ERISA provides that the IRS may grant such waivers if the employer demonstrates that it is unable to satisfy the minimum funding standard without substantial business hardship and if insistence that the standard be met would be adverse to the interests of the plan participants. *See* 29 U.S.C. § 1083(a). It also provides, as amended in 1986, that the employer requesting a waiver give the union notice of the waiver application, and that the IRS consider any "relevant information" submitted by the union. 29 U.S.C. § 1083(e). Pursuant to the notice requirement, East-

ern sent notice to the union that same day that it had applied for a waiver.

The union wrote to the IRS on September 26, 1986, stating that it was in receipt of Eastern's notice of a pending waiver application and that the union wished to invoke its statutory right to submit information concerning the application. The union noted that the IRS had not yet issued any specific guidelines for how such input was to proceed under the 1986 Amendment and suggested a procedure of its own. It proposed a timetable whereby the union would have 30 days to provide information to the IRS and another 30 days to reply to any further submissions from Eastern or any questions from the IRS. The union maintained, however, that the timetable should not take effect until it received a copy of Eastern's waiver application so that it could offer meaningful commentary on the waiver request. It requested that the IRS either provide the union with a copy of Eastern's waiver application or that it direct Eastern to do so.

The union received no response to this first letter. On November 18, 1986, it sent a second letter. This letter was addressed to Katherine Marticello, the IRS employee who was working on the Eastern waiver application. It reiterated the union's interest in commenting on the application and included a copy of the first letter. Still, no answer was forthcoming from the IRS. Eventually, on February 26, 1987, the union reached Marticello by telephone. She informed the union representative that the IRS had referred the matter to the Pension Benefit Guaranty Corporation ("PBGC"). She stated that she believed that the IRS was statutorily barred from revealing the contents of the waiver form and that she therefore could not comply with the union's request. But she suggested that the union submit in writing any comments that it wished to make to the IRS. The IRS approved Eastern's waiver request on a conditional basis on January 27, 1987. The arrangement arrived at by the IRS provided that Eastern would pay the $16 million then owing into the plan over a three-year period and secure the waived amount with collateral approved by the PBGC.

On March 2, 1987, appellants filed suit in the U.S. District Court for the District of Columbia, alleging that the IRS had deprived it of its statutory right to comment on Eastern's waiver application and had thereby precluded itself from fulfilling its own statutory obligation to take into account the union's views in its consideration of the waiver. The union sought preliminary and permanent injunctive relief ordering the appellees to (1) withdraw the conditional funding waiver granted to Eastern; (2) provide the union with a copy of the waiver application; (3) allow the union 30 days to comment on the application after receiving it; and (4) process the waiver application again, taking into account the union's comments. The union also sought an order restraining the PBGC from reaching a security agreement with Eastern until the application was reconsidered.

The district court denied appellants' motion for a preliminary injunction and granted appellees' motion to dismiss. The court based its decision on two distinct grounds. First, the court held that the appellants lacked standing to sue. It stated that the injury at issue in the case was loss of retirement benefits and that this injury was not fairly traceable to the appellees' actions or redressable by the relief sought in the suit. The court stated that it was "speculative" whether forcing the IRS to make the waiver application available and review the union's comments would have any impact on the benefits paid if the plan terminated. In addition, the district court found that even if appellants had standing, their complaint failed to state a claim upon which relief could be granted. The court held that the union's statutory right to notice of the filing of a waiver application and its right to submit information to the IRS about the application do not include a right to examine the actual waiver application.

## II. Discussion

### A. *Standing*

■ This court has made clear in the past that litigants have standing to bring actions to vindicate procedural rights guaranteed by statute. In *National Conservative Political Action Committee v. FEC*, 626 F.2d 953, 957 (D.C.Cir.1980) ("*NCPAC*"), for example, we held that when a statute provides that "interested persons" have the right to comment on a proposed agency action, a political organization has standing to challenge an agency action that deprived it of that opportunity to comment. We held in that case that to have standing in such circumstances "[a] plaintiff need only allege that it was denied th[e] opportunity [to comment] and that, had the opportunity been made available, it would have commented upon" the agency action. *Id.* In the case at bar, appellants' case for standing is even stronger than that of the petitioner in *NCPAC* because they sue to vindicate a right that a statute accords not merely to "interested persons," but to employee organizations such as the union here. *See* 29 U.S.C. § 1083(e)(1) (conferring a right to receive notice of the filing of a waiver application upon "each employee organization representing employees covered by the affected plan"); *id.* § 1083(e)(2) (directing the Secretary to "consider any relevant information provided by" one who has received notice under subsection (1)).

The district court presented two bases for denying standing, neither of which conforms to our precedents. First, the district court attempted to dismiss appellants' stake in their claim as merely procedural and therefore not sufficient to accord standing. *See McGarry*, Mem.Op. at 7 (stating that a litigant lacks standing to challenge a "[m]ere loss of opportunity to comment on a proposed agency ruling"). Such an analysis fails to recognize, however, that in a claim such as that which appellants bring here, procedural and substantive stakes are inextricably intertwined. *See, e.g., National Wildlife Fed'n v. Hodel*, 839 F.2d 694, 712 (D.C.Cir.1988) ("[F]or [members of organizational plaintiff] voicing environmental concerns ... the opportunity to see and use an EIS [relevant to those concerns] ... does constitute a constitutionally sufficient injury on which to ground standing.") In bring-

ing this action for access to the application, appellants are not seeking to vindicate a procedural right *in vacuo*. If the waiver is granted, not only is the funding level of the pension fund lowered, but appellants are deprived by statute of the opportunity to bargain for increased benefits during the waiver period. The ability of appellants to preserve these interests is directly tied to the procedural protections accorded by Congress in the 1986 amendments to ERISA. Having been given a procedural right by Congress to help protect these interests, appellants must have standing to challenge an alleged deprivation of the right. *See Nichols v. Board of Trustees*, 835 F.2d 881, 896 (D.C.Cir.1987) ("Beneficiaries in a plan qualifying under ERISA unquestionably possess an 'interest' in agency deliberations that might reduce their retirement benefits.").

■ The district court held alternatively that even if appellants were held to have suffered an injury sufficient to accord them standing, they failed to make the requisite showing of redressability. The court held that it was unlikely that appellants would actually change the IRS' decision on the waiver application even if the union were given its full notice rights and that appellants therefore failed to make the necessary showing that the remedy would redress the alleged injury. This analysis is equally misplaced. A ruling in their favor by this court would redress appellants' injury because it would vindicate the rights guaranteed to them by ERISA. Appellants bear no burden of showing that had they been permitted to exercise their statutory rights, their comments would have had an "effect on the level of funding and actual benefits to be paid from the plan...." *McGarry*, Mem.Op. at 9. It is a well-established rule that a party suing to vindicate such rights need not make a showing that the agency would have acted differently. *See NCPAC*, 626 F.2d at 957; *Committee for Full Employment v. Blumenthal*, 606 F.2d 1062, 1065 (D.C.Cir.1979) ("Complainants are injured if this procedural right is denied them, regardless of whether the complaint is ultimately found meritorious.") *(footnote omitted)*. Having deter-

mined that appellants have standing, we proceed to the merits.

### B. *The Merits*

■ The district court held that even if appellants had standing to maintain this action, the suit must be dismissed for failure to state a claim. The court dismissed appellants' claim that they had a statutory right to inspect the waiver application as part of their right to provide information, stating that "ERISA's language is clear, and the statute simply does not provide for the right of 'comment' that plaintiffs assert." *McGarry*, Mem.Op. at 10. We agree.

ERISA states in relevant part:

(1) The Secretary of the Treasury shall, before granting a waiver under this section, require each applicant to provide evidence satisfactory to such Secretary that the applicant has provided notice of the filing of the application for such waiver to each employee organization representing employees covered by the affected plan ...

(2) The Secretary of the Treasury shall consider any relevant information provided by a person to whom notice was given under paragraph (1).

29 U.S.C. § 1083(e). Appellants contend that, although it does not expressly say so, § 1083(e) confers upon the union a right to examine the waiver application. Their argument rests largely on an analogy to the "notice and comment" provisions of the Administrative Procedure Act, 5 U.S.C. § 553(c). They argue that the notice provision of § 1083(e) is substantially similar to that of § 553(c) and that it should entitle them to the same range of access rights that have been held to fall under the "notice and comment" provision of the APA. We are not, however, persuaded by this argument. The submission of a waiver application is not a rulemaking proceeding, and Congress gave clear indications that it did not intend § 1083(e) to accord the union the access it seeks.

As the district court notes, appellants' central argument is essentially an attempt to "bootstrap" their claim to entitlement to access to the waiver application to notice-and-comment procedures that have arisen

in an entirely different context. *McGarry*, Mem.Op. at 10. The IRS' decision whether to grant an ERISA waiver is not, however, administrative rulemaking; it is a determination in a private, fact-bound case that does not attempt to create procedures of general application. As such, the notice-and-comment rights associated with § 553(c) do not apply here. *See Eastern Kentucky Welfare Rights Org. v. Simon*, 506 F.2d 1278 (D.C.Cir.1974), *rev'd on other grounds*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). Despite appellants' implicit claim to the contrary, the special procedures surrounding § 553(c) rulemaking do not automatically apply whenever a statute includes the word "notice." The analogy to § 553(c) proceedings has little force.

We are also mindful that elsewhere in the statute Congress has spoken to the question of the confidentiality of minimum funding waiver applications. In the section governing referral of waiver applications to the PBGC by the IRS, the statute expressly provides that such applications are to "be considered tax return information and subject to the safeguarding and reporting requirements" applicable to tax returns. 29 U.S.C. § 1085a(b). Appellants' contention that § 1083(e) entitles them to examine the waiver application is inconsistent with Congress's express statement that the waiver is to be treated as confidential "tax return information." *Id.* This inconsistency provides further reason for us to eschew their suggested interpretation. *See Citizens to Save Spencer County v. EPA*, 600 F.2d 844, 879 (D.C.Cir.1979) ("statutory provisions, whenever possible, should be construed so as to be consistent with each other").

It is a settled principle of statutory construction that "[a]bsent a clearly expressed legislative intention to the contrary, [a statute's] language must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The plain language of ERISA does not mention the right to access to the waiver application that appellants claim. The only indication of legislative intent that we can discern indicates that Congress did not intend to give appel-

lants this right. That being the case, we must concur with the district court that these procedures "cannot be engrafted onto the statute by th[is] Court." *McGarry*, Mem.Op. at 11.

The statute states that the union is entitled to "notice" that a waiver application has been filed and to have the Secretary "consider any relevant information" it might provide. The record demonstrates that the union duly received notice and that it did not submit any "information" for the Secretary to evaluate. Congress has accorded the union no further right.

We are not insensitive to the union's plight. Congress meant to advance the interests of unions and those they represent by letting them know of waiver applications so they could have their say. But Congress also shielded waiver applications by qualifying them as "tax return information." Congress might have made provision for supplying unions with edited copies of the application, *cf.* 26 U.S.C. § 6110, but it did not do so. The IRS has no cause to make such a provision without congressional instruction, and a reviewing court holds no warrant to augment what the legislature ordered.

The decision of the district court is

*Affirmed.*