**COMITE DE APOYO PARA LOS TRABAJADORES AGRICOLAS (CATA), et al., Plaintiffs,**

**v.**

**Elizabeth DOLE, Secretary of Labor, et al., Defendants.**

**Civ. A. No. 89–2257.**

United States District Court, District of Columbia.

Feb. 27, 1990.

Bruce Goldstein, Washington, D.C., Edward J. Tuddenham, Austin, Tex., Keith Talbot, Bridgeton, N.J., for plaintiffs.

Sandra M. Schraibman, Lynn D. Wardell, Civ.Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM

GESELL, District Judge.

This case is before the Court on defendants' motion to dismiss or alternatively for summary judgment, which plaintiffs have opposed. The motion has been fully briefed and argued.

Plaintiffs are CATA, a farmworker group, and two farmworkers. They filed this action against the Secretary of Labor complaining that the Department published a new definition of "prevailing practice" which alters to their disadvantage the "H-2A" nonimmigrant visa program for temporary foreign farmworkers. They seek a permanent injunction striking the definition, which they claim was issued in violation of the Administrative Procedures Act.

"H-2A" visas permit an employer of farm labor to hire foreign farmworkers. The Immigration and Nationality Act ("INA"), as amended by the Immigration Reform and Control Act of 1986 ("IRCA"), provides that the Attorney General may not grant an employer H-2A visas unless the Secretary of Labor certifies that there are not sufficient U.S. workers for the jobs and that the hiring of foreign workers will not adversely affect wages and working conditions of similarly employed U.S. workers. 8 U.S.C. § 1188(a).

An employer seeking certification to hire H-2A workers must meet certain labor standards. Some of these standards are fixed by regulation, see 20 CFR Part 653, Subpart F, and are mandatory nationwide for employers wishing to participate in the H-2A program. Other standards are imposed only when they are deemed in the employer's region to be "normal" or "common," which the Department defines as "less than prevailing, but ... clearly ... not unusual or rare." H-2A Program Handbook at II-7 (1988). See, e.g., 20 CFR § 655.102(b)(3). A third category of standards, the category at issue here, is described as "prevailing practices." Pursuant to regulations, an employer seeking H-2A visas must adhere to the prevailing practices in his region as to family housing, transportation advances, frequency of payment, and utilization of farm labor contractors. See 20 CFR §§ 655.102(b)(1)(vi), 655.-102(b)(5), 655.102(b)(10), 655.103(f).

The disputed definition was included in the H-2A Program Handbook released in June 1988. The Department published the handbook "as an informational notice" in the Federal Register without inviting public comment prior to adoption. 53 Fed.Reg. 22076 (June 13, 1988).

The H-2A handbook defines a "prevailing practice" as a practice that is observed by a majority of employers of U.S. workers in an occupation in an area *and* "this majority of employers ... also employs a majority of U.S. workers in the occupation in the area." Handbook at II-6, 53 Fed.Reg. 22095.

The complaint asserts 1) that the handbook definition is a new substantive rule, adopted without required APA notice and comment procedures; and 2) that the definition is arbitrary and capricious in that it is contrary to the plain meaning of "prevailing" presumably applicable and was adopted without a reasoned explanation. Plaintiffs claim the definition will harm U.S. workers and violates the immigration laws and regulations.

Plaintiffs do not take a position as to the specific definition they would consider most appropriate but suggest that either a definition requiring a majority of employers or one requiring a majority of employees would meet the common meaning of "prevailing," whereas the handbook's "double majority" requirement does not.

Defendants' motion is addressed to standing and ripeness arguments as well as to the merits. Plaintiffs take the position that additional discovery is required and

have not cross-moved for summary judgment at this stage.

### Case or controversy

Plaintiffs seek to encourage higher standards for domestic farmworkers and feel the "double majority" rule will be harmful because under it prevailing practices will be more difficult to establish. It is necessarily true that a "double majority" requirement will not produce more "prevailing practices" than either a "majority of employers" or "majority of employees" test alone. The "double majority" is thus likely to produce fewer "prevailing practices," resulting in less protection for U.S. farmworkers. Defendants argue, however, that plaintiffs have no standing and the case is not ripe for review because plaintiffs have not alleged specific incidents wherein the new definition caused them direct harm.

Plaintiffs attempt to point to two examples of concrete harm. One is that in 1985 the Department's Philadelphia regional administrator proposed to find a prevailing practice but his proposal was rejected by an official asserting the disputed definition. A second example occurred in July 1988, when the disputed definition allegedly precluded the finding of another prevailing practice, thus preventing family housing for workers from becoming a required element of H–2A work contracts for apple growers in an eight-county area. Plaintiff CATA is the designated labor organization for contracts in that region.

Plaintiffs cite *International Union of Bricklayers v. Meese*, 761 F.2d 798 (D.C. Cir.1985), which held that a union had standing and a cause of action to contest INS internal guidelines regarding the importation of temporary alien workers even though the union had not proven that its workers would be hired if the court overturned the guidelines. It was enough for the court that the plaintiffs could show two incidents where aliens were admitted to perform work that union members were said to be capable of performing.

The harm suffered by CATA here is somewhat less concrete. Plaintiffs have not shown that any particular H–2A employer declined to offer to a benefit it would have been required to provide under a broader definition of "prevailing practice" and that any CATA member worked for such an employer. Nor is there alleged any harm to the two individual farmworker plaintiffs, both residing in Puerto Rico.

More helpful to the plaintiffs is *International Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795, 807–811 (D.C. Cir.1983), *cert. denied*, 469 U.S. 820, 105 S.Ct. 93, 83 L.Ed.2d 39 (1984) (*"ILGWU"*), in which the Court of Appeals found that garment makers and unions had standing to challenge a Labor Department rule permitting homework in the knitted outerwear industry. The basis of their claimed harm was their contention that the Department would be unable adequately to protect minimum wage and working conditions among homeworkers and that, as a result, they might suffer unfair competition from homeworker employers. To find standing, the Court of Appeals had to assume that enforcement would be inadequate, and that as a result lawbreaking homework employers could sell goods for less, thus reducing business for the plaintiff businesses and leading to layoffs or reduced wages for the union workers.

The harm here is less speculative. It is certain that the "double majority" requirement will produce no more "prevailing practices" than use of either single majority, and it is extremely likely that the "double majority" requirement will produce less "prevailing practices" for some crops in some areas. Any injuries resulting from a reduced number of "prevailing practices" due to the "double majority" requirement can fairly be traced to the disputed definition, and use of a single majority requirement would likely redress such potential injuries. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976).

■ In addition, workers represented by CATA are clearly within the zone of interests protected by the relevant statute. *See ILGWU*, 722 F.2d at 809; *Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). IRCA provides that H–2A temporary worker visas will issue only if issuance will not "adversely affect" the wages and working conditions of similarly employed U.S. workers, such as the individual plaintiffs and others represented by CATA. 8 U.S.C. § 1188(a)(1)(B). Thus, their right to seek redress is buttressed by the Administrative Procedure Act, at 5 U.S.C. § 702, which provides that a person "adversely affected or aggrieved by agency action" may obtain judicial review. *ILGWU*, 722 F.2d at 809–10.[1]

■ The Court further notes that it might be difficult for the plaintiffs to pinpoint specific instances of concrete harm where, as here, the wrong complained of is a definition that results in agency inaction, i.e. no finding of certain "prevailing practices." Moreover, in contrast to employers, who may appeal a denial of H–2A certification and thereby challenge the definition or application of "prevailing practice," employees have no specific means of challenging administratively a specific instance wherein a Department official declines to find a prevailing practice under the "double majority" rule.[2]

The Court concludes that, under the circumstances, the 1988 incident must be deemed to give plaintiff CATA standing and makes the case ripe for resolution on the merits. Plaintiffs Elvin Burgos and Bienvenido Quiros, however, lack standing and must be dismissed from the case.

*Merits*

The arguments on the merits go to two separate claims, the first procedural, the second substantive. The first claim is that the Department was required to subject the disputed definition to notice and comment procedures because it represented a substantial deviation from prior policy. The second is that the rule is substantively unreasonable.

As to the first claim, defendants assert that the disputed definition is an "interpretive rule"—i.e. a statement of what the agency thinks Congress meant by the statute—and thus statutorily exempt from APA notice and comment requirements, *see* 5 U.S.C. § 553(b), (d)(2), and not a "legislative rule"—i.e. a rule by which the agency is adding substantive content of its own. *See General Motors Corp. v. Ruckelshaus*, 742 F.2d 1561 (D.C.Cir.1984) (*en banc*), *cert. denied*, 471 U.S. 1074, 105 S.Ct. 2153, 85 L.Ed.2d 509 (1985); *Batterton v. Marshall*, 648 F.2d 694 (D.C.Cir.1980).

An essential feature of an interpretive rule, however, is that it does not "create any new rights or duties; instead, it simply restate[s] the consistent practice of the agency...." *General Motors*, 742 F.2d at 1565. *See also American Postal Workers Union v. United States Postal Service*, 707 F.2d 548 (D.C.Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1594, 80 L.Ed.2d 126 (1984). The evidence in the record indicates that the disputed "double majority" definition of "prevailing practice" does not reasonably restate the consistent practice of the agency.

The term "prevailing practice," was used prior to the adoption of IRCA and the

---

1. Plaintiffs argue that even if they lack standing to challenge the substance of the disputed definition, they have standing to challenge the Department's failure to provide notice and comment procedures. The law of this circuit is that where a statute guarantees certain procedural rights, denial of such rights creates standing. *See McGarry v. Secretary of the Treasury*, 853 F.2d 981, 984–85 (D.C.Cir.1988) (union members had standing to complain that IRS ignored their statutory right to comment on a proposed action); *National Conservative Political Action Committee v. FEC*, 626 F.2d 953, 959 (D.C.Cir.

1980) (political organization had standing to complain that FEC ignored its statutory right to comment on an FEC opinion). However, the statutes at issue here, INA and IRCA, do not create any rights in plaintiffs to complain of lack of notice-and-comment procedures.

2. A general Department regulation permits any person to mail to the Department a complaint that a Department office has violated Job Service Program regulations. 20 CFR § 658.426.

H–2A program under the predecessor H–2 program. In fact, a "prevailing" standard aimed at protecting farmworker conditions was in effect as early as 1946, 11 Fed.Reg. 11278 (October 3, 1946), §§ 23.1(k), 21.12, an even more clear "prevailing practice" approach was fixed by regulations by 1959, 24 Fed.Reg. 9367 (November 20, 1959), and the "prevailing practice" approach was applied in early H–2 program regulations in the 1960s. See 32 Fed.Reg. 4570 (March 28, 1967). Apparently, however, "prevailing practice" has never been defined in the INA, in IRCA or in published regulations.

Defendants point to no evidence that the "double majority" was ever utilized by anyone in the Department until 1985—many years after adoption of the "prevailing practice" concept.

Defendants claim that the Handbook's disputed definition merely repeats a definition contained in previous "interpretive letters," dating back to 1979, that were issued by the Department without notice and comment. But these previous letters do not contain the disputed definition. The letters advise H–2A program staff that past farm employer practices should "be examined both in terms of the number of employers and the number of workers involved" but immediately thereafter instruct staff to "identify the number of orders containing the majority of workers who either were or were not offered a specific benefit...." This language is far from a directive to strictly apply a "double majority" rule; it appears instead to be an instruction simply to take into account both employers and employees in making a discretionary choice as to whether a practice is "prevailing." In sharp contrast, when questioned by the Court at oral argument, agency counsel stated categorically that the handbook definition is mandatory, binding Department policy, not simply a factor to guide the discretion of regional administrators. See Batterton, 648 F.2d at 701–02 (binding nature of an agency policy indicates that it is a legislative rule).

The Department also points to a 1985 letter from the Acting Administrator for Regional Management in response to a query from the Philadelphia regional administrator. This letter clearly does state that a "double majority" is required in order to find a "prevailing practice." But the only authority for the "double majority" cited in the letter is one of the inconclusive interpretative letters discussed supra. Moreover, this single piece of correspondence to a single official is the only evidence offered that the "double majority" was mandatory prior to publication of the 1988 handbook. The Department has produced no evidence that the "double majority" approach was a policy made clear to other regional authorities charged with identifying prevailing practices. In addition, the fact that the Philadelphia official sought guidance as to the meaning of "prevailing practice" in 1985 belies the Department's claim that the "double majority" rule had been in effect since 1979.

The Department also claims that a 1987 letter sent to it by plaintiffs' counsel in this action complained of an instance in which the Department applied a "double majority." In fact, the letter makes clear the attorney's view that the Department had not applied a consistent definition of "prevailing practice"; the letter suggests that the attorney was concerned not about a "double majority" requirement but rather about an incident involving an allegedly result-oriented switch from a "number of employees" test to a "number of employers" test.

On the other hand, plaintiffs call to the Court's attention a 1987 ruling by a District of Columbia-based Labor Department Administrative Law Judge that "prevailing practice" meant majority of employers only—an indication that the Department's supposedly fixed policy was not well-known at the time. In the Matter of Azor v. Hepburn Orchards, Inc. (J.S. Case Nos. 4630–83–17, 4630–83–50 December 14, 1987).

Defendants, moreover, have not produced a single affiant who can attest from personal knowledge to the longevity of the disputed definition. In the single affidavit provided, a high-ranking Department official states that "[u]pon review of the De-

partment's information and files on this matter, I have determined that this definition is not a departure...." But this official cites the same unconvincing documents previously discussed.[3]

■ In sum, the record indicates that the disputed definition effected a substantive policy change in that it imposed a mandatory "double majority" test on what was previously a less guided and more discretionary inquiry by decisionmakers at the regional level. Moreover, the "double majority" standard appears not to be a simple interpretation of the INA or IRCA but rather appears to add substantive content to laws aimed at protecting domestic farmworkers while permitting entry of temporary foreign workers.

Defendants, faced with the relatively straightforward task of proving the existence of a mandatory policy, came up almost empty-handed. The plaintiffs faced a greater challenge, i.e. proving that such a policy did not exist. By questioning the significance of each piece of defendants' evidence, they have met this task to reasonable certainty, demonstrating to the Court's satisfaction that the "double majority" was not a long-established mandatory policy at the time of publication of the 1988 H–2A handbook.

Accordingly, defendants are not entitled to dismissal or summary judgment. Nor are plaintiffs correct that further "substantial discovery efforts" are required to resolve this case. Undisputed facts in the record, i.e. the Labor Department documents discussed *supra,* indicate that the "double majority" is a legislative rule. Therefore, "no useful purpose would be served by delaying the entry of summary judgment" for the non-moving party, and a

*sua sponte* grant of summary judgment to the plaintiffs is required on their notice and comment claim. *Kennedy v. Whitehurst,* 509 F.Supp. 226 (D.D.C.1981), *aff'd,* 690 F.2d 951 (D.C.Cir.1982).

The Department is directed to engage in informal notice and comment rulemaking with respect to the definition of "prevailing practice" under the H–2A visa program.

■ Given the failure of plaintiffs to allege with specificity any ongoing harm from the disputed definition, and the deference generally owed to an agency's interpretation of its own regulations, *see Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *cf. Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (deference to agency interpretation of a statute), the Court will not enjoin operation of the rule during the pendency of the rulemaking, but it will direct that the rulemaking proceed promptly. The Department may set its own reasonable schedule, but the rulemaking shall be completed and a final rule published with dispatch.

Plaintiff's second claim, that the disputed definition is unreasonable, is premature. Notice and comment procedures pursuant to informal rulemaking will permit growers as well as worker representatives to comment on the definition and propose alternatives and will permit the Department to explain, based on materials in the rulemaking record, the reasons for the result it ultimately reaches.[4]

A separate Order accompanies this Memorandum.

## ORDER

Upon consideration of the pending motions, the opposition thereto and the entire

---

3. In addition, the affiant indicates his degree of confidence in his representations by appending to the standard verification, "I declare under penalty of perjury that the foregoing is true and correct," the qualification "to the best of my knowledge and recollection."

4. At this stage, it is far from clear that the disputed definition is unreasonable. However, the only explanation for it to which the Department can point is a portion of the Handbook, repeated in the Federal Register, that simply explains the difference between "prevailing" practices and "normal" or "common" practices. Handbook, II–5, 7; 53 Fed.Reg. 22095–96. The plaintiffs have found an additional justification for the "double majority" policy in a Department internal document, namely that it would protect smaller growers, who would more frequently have to match the practices of larger, corporate employers under a simple "majority of workers" test.

record herein, and for the reasons stated in the accompanying Memorandum, it is hereby

ORDERED that defendants' motion to dismiss or alternatively for summary judgment is denied in part and granted in part; and it is further

ORDERED that plaintiffs Burgos and Quiros are dismissed from the case for lack of standing; and it is further

ORDERED that summary judgment is entered by the Court *sua sponte* for plaintiff CATA on the complaint's first cause of action; and it is further

ORDERED that the Department of Labor shall undertake informal notice and comment rulemaking pursuant to the Administrative Procedures Act with respect to the definition of "prevailing practices" for purposes of the H–2A visa program, such rulemaking to culminate in publication of a final rule with dispatch; and it is further

ORDERED that the definition of "prevailing practices" in the June 1988 H–2A handbook shall remain in effect pending completion of the rulemaking; and it is further

ORDERED that the complaint's second cause of action is dismissed without prejudice for lack of ripeness; and it is further

ORDERED that defendants' unopposed motion to file a reply to plaintiffs' surreply on defendants' motion is granted; and it is further

ORDERED that plaintiffs' unopposed motion for oral argument is granted *nunc pro tunc.*