7 F.3d 396
 FEDERAL DEPOSIT INSURANCE CORPORATION, in its Corporate
capacity as an instrumentality of the United
States, Plaintiff-Appellant,
v.
Charles P. COCKE, Defendant-Appellee.
FEDERAL DEPOSIT INSURANCE CORPORATION, in its Corporate
capacity as an instrumentality of the United
States, Plaintiff-Appellant,
v.
Julius F. FOGEL, Defendant-Appellee.
FEDERAL DEPOSIT INSURANCE CORPORATION, in its Corporate
capacity as an instrumentality of the United
States Receiver of McLean Savings and
Loan Association, Plaintiff-Appellant,
v.
Lloyd B. RAMSEY; Preston L. Walker; Richard E. Blair;
John E. Harn, II; Terry B. Light; John E.
Harrison; Light & Harrison, PC,
Defendants-Appellees,
and
Thomas J. Leonard, III; Frank M. Howard; Julius F. Fogel,
Defendants.
 Nos. 92-1987, 92-1994 and 92-1996.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 6, 1993.
Decided Oct. 15, 1993.
 
 Richard Joseph Osterman, Jr., Senior Counsel, F.D.I.C., Washington, D.C., argued (Ann S. DuRoss, Asst. Gen. Counsel, Robert D. McGillicuddy, Deputy Senior Counsel, Marta W. Berkley, Charles McDonald, Professional Liability Claims Section, F.D.I.C., Washington, D.C., on brief) for plaintiff-appellant.
 J. Jonathan Schraub, Melrod, Redman & Gartlan, P.C., Washington, DC, Thomas L. Appler, McGuire, Woods, Battle & Boothe, McLean, VA, Douglas Frank Curtis, Miller, Cassidy, Larroca & Lewin, Washington, DC, argued (Danny M. Howell, Niccolo N. Donzella, Melrod, Redman & Gartlan, P.C., Washington, DC, Randall J. Turk, Miller, Cassidy, Larroca & Lewin, Washington, DC, William T. Freyvogel, Adams, Porter & Radigan, Ltd., McLean, VA, on brief), for defendants-appellees.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 OPINION
 ERVIN, Chief Judge:
 
 
 1
 The Federal Deposit Insurance Corporation ("FDIC"), acting as receiver of McLean Savings & Loan Association ("McLean"), elected to proceed with a breach of duty action against various parties affiliated with the savings and loan. The district court summarily disposed of all the FDIC's claims as untimely filed under the applicable Virginia[1] statute of limitations. This appeal presents the issue whether federal or Virginia law may operate to toll the running of the statute of limitations on any of the FDIC's claims. Concluding that Virginia's equitable estoppel doctrine could toll the running of the statute of limitations making some or all of the FDIC's claims timely, we reverse the district court's dismissal of the claims on the basis of the running of the statute of limitations. To the extent that individual defendants contend that action against them is inappropriate on grounds other than the statute of limitations, we will discuss their situations in turn.
 
 
 2
 * The issues raised by this appeal revolve largely around interpretation and application of law; therefore, only a limited familiarity with the facts is necessary. McLean was a state-chartered, federally-insured stock savings association located in McLean, Virginia. By participating in the federal insurance program, McLean subjected itself to federal examinations and, in troubled times, oversight. For several years, McLean operated without incident, making traditional home mortgages. As interest rates became more competitive, McLean sought additional ways to generate revenues, however. In 1981 McLean formed McLean Financial Corporation ("MFC"), a financial service subsidiary to McLean, to originate, broker, buy, sell, and service residential real estate loans. Many of McLean's directors also sat on the board of MFC.[2]
 
 
 3
 MFC, though initially very profitable, began to suffer losses in 1985, prompting McLean to attempt to bolster the subsidiary's slumping financial performance. McLean began making unsecured loans to MFC, allegedly without seeking the required regulatory approval. In 1986 the McLean board also approved the payment of dividends to McLean shareholders despite the institution's financial inability to make such payments. This misconduct together with other asserted fraudulent and unscrupulous transactions propelled McLean into receivership on July 8, 1988.[3] As receiver the FDIC retained any potential claims the corporation could have maintained against its former directors, officers, or attorneys for their breaches of duty owed to the corporation. Therefore, on November 29, 1991, the FDIC brought the first of three lawsuits alleging breaches of duty based on the conduct involving the management of McLean and MFC.[4] The first action was filed against Thomas J. Leonard, III, Frank M. Howard,[5] Lloyd B. Ramsey, Preston L. Walker, and Richard E. Blair--former directors of McLean and MFC--for breach of their fiduciary duty of care to the corporations for which they served. Amending this complaint, the FDIC added similar charges against John E. Harn, II, McLean's president; John E. Harrison, McLean director and attorney; Terry B. Light, McLean attorney; and Light & Harrison, P.C., general counsel to McLean. After failed attempts to add additional directors through amendment, the FDIC filed separate complaints against Charles P. Cocke and Julius F. Fogel. The FDIC entered into tolling agreements with the directors and attorneys named in the three actions to establish the filing of its complaints on June 5, 1991, for purposes of invoking the statute of limitations.
 
 
 4
 In the district court, the FDIC claims were maintained as FDIC v. Leonard (CA-91-1773-A); FDIC v. Cocke (CA-92-350-A); and FDIC v. Fogel (CA-92-496-A). Defendants in FDIC v. Leonard brought a motion to dismiss or alternatively for summary judgment. The district court granted summary judgment for the defendants on the basis that the applicable Virginia statute of limitations had run before the FDIC acquired rights in the cause of action. See FDIC v. Leonard, No. CA-91-1773-A, orders (E.D.Va. Jul. 20, 1992 & May 2, 1992) (dismissing claims against Thomas J. Leonard, III and Frank M. Howard); order (E.D.Va. May 20, 1992) (dismissing claims against Lloyd B. Ramsey and Preston L. Walker); order (E.D.Va. May 1, 1992) (dismissing claims against Richard E. Blair, John E. Harn, II, Terry B. Light, John E. Harrison, and Light & Harrison, P.C.). The district court, recognizing the factual similarity of FDIC v. Cocke and FDIC v. Fogel, dismissed them on the basis articulated in FDIC v. Leonard. See FDIC v. Cocke, No. CA-92-350-A, order (E.D.Va. Aug. 12, 1992); FDIC v. Fogel, No. CA-92-496-A, order (E.D.Va. June 17, 1992). The FDIC appealed the summary disposition of all three cases. We consolidated the cases and deal with them as one in this opinion.
 
 II
 
 5
 * Federal banking regulation, in an effort to mitigate the costs to the taxpayer of bank and savings and loan failures, permits the FDIC to pursue any claims a corporation might have against its officers or directors once the FDIC becomes receiver of that corporation. See 12 U.S.C. § 1821(d); Texas Am. Bancshares, Inc. v. Clarke, 954 F.2d 329, 339 (5th Cir.1992). These breach of duty causes of action are hybrid in nature--authorized and enabled by state law, but appropriated by the FDIC as a means of redress for violations of various federal banking acts. Therefore, the analysis required to determine the viability of such an action is somewhat tedious, incorporating components of both state and federal law. The most problematic aspect of these actions is the determination of whether a statute of limitations bars the claim. This determination proves taxing because the applicable state statute of limitations controls whether the action is viable when the right to bring the action inures to the FDIC, while the applicable federal statute of limitations controls whether the action was timely filed.
 
 
 6
 To determine whether a statute of limitations bars the FDIC's actions in this case, we must first answer the following question: Did the Virginia statute of limitations run between the time the action accrued and the date of receivership? To answer this question, we must determine the applicable Virginia statute of limitations and the effect, if any, of any provisions of Virginia law to toll the running of the statutory period.
 
 
 7
 The FDIC attempts to add a gloss to our analysis by suggesting that federal law must guide and inform the application of the state statute of limitations. The FDIC cites United States v. Kimbell Foods, Inc., 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), for this proposition, urging us, in applying the state statute of limitations, to incorporate a uniform federal tolling rule patterned after the doctrine of adverse domination. In Kimbell Foods the Supreme Court discussed when federal common law must govern federal actions complicated by state substantive components. The Court noted that
 
 
 8
 [t]o resolve this question, we must first decide whether federal or state law governs the controversies; and second, if federal law applies, whether this Court should fashion a uniform ... rule or incorporate state ... law.
 
 
 9
 Id. at 718, 99 S.Ct. at 1453.
 
 
 10
 In Kimbell Foods the Court was called upon to determine "whether contractual liens arising from certain federal loan programs take precedence over private liens, in the absence of a federal statute setting priorities." Id. at 718, 99 S.Ct. at 1453. The Court held:
 
 
 11
 That the statutes authorizing these federal lending programs do not specify the appropriate rule of decision in no way limits the reach of federal law. It is precisely when Congress has not spoken "in an area comprising issues substantially related to an established program of government operation," that Clearfield directs federal courts to fill the interstices of federal legislation "according to their own standards."
 
 
 12
 Id., at 727, 99 S.Ct. at 1457 (quoting United States v. Little Lake Misere Land Co., 412 U.S. 580, 593, 93 S.Ct. 2389, 2397, 37 L.Ed.2d 187 (1973) and Clearfield Trust Co. v. United States, 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943)) (citations omitted). The Court went on to adopt the states' systems of priority as the governing federal common law. Id. at 729, 99 S.Ct. at 1459.
 
 
 13
 In this case an extensive program of federal regulation does not enable the FDIC's breach of duty cause of action. Although federal law allows the FDIC, as receiver, to bring McLean's claims, the claims are uniquely state-law causes of action acquired through a wholesale takeover of McLean's assets. If it were not for Virginia common law's prohibition against breaches of fiduciary duty by corporate directors, the FDIC would have no claims to bring. Therefore, this case does not present the situation in which federal statute authorizes and outlines federal activity, but neglects to furnish a crucial provision that would effectuate the federal activity more appropriately.
 
 
 14
 Under the Kimbell Foods analysis, the FDIC has failed to demonstrate the presence of a federal program suffering from the absence of a controlling piece of federal law. Instead, the FDIC wishes to advance a state-law cause of action, and must be governed by the Virginia courts' and legislature's interpretations of that action. See White v. FDIC, 122 F.2d 770, 774-75 (4th Cir.1941) (looking to Virginia law to determine whether Virginia's statute of limitations is tolled during period of director wrongdoing), cert. denied, 316 U.S. 672, 62 S.Ct. 1043, 86 L.Ed. 1747 (1942).B
 
 
 15
 The FDIC argues on appeal that the district court incorrectly applied Virginia's statute of limitations in two material ways. First, the FDIC contends that the district court chose the incorrect Virginia statutory bar to apply to its breach of duty claims. In addition, the FDIC suggests that the district court erred by not applying, as a matter of federal common law, the doctrine of adverse domination to toll the Virginia statute of limitations for the period of time during which the directors who are defendants in this action controlled McLean's and MFC's boards. Because we reject the FDIC's argument that tolling, in this case, should be governed by federal law, we limit our analysis to the applicable statute of limitations and its ability to be tolled under Virginia law.
 
 
 16
 Therefore, the first step toward our decision whether a statute of limitations bars the FDIC's action is the determination of what statute of limitations Virginia applies to breach of duty actions. The FDIC disagrees with the decision the district court made to apply Virginia's one-year statute of limitations to its causes of action. Virginia's one-year statute of limitations applies to "[e]very personal action, for which no limitation is otherwise prescribed." Va.Code Ann. § 8.01-248 (Michie 1992). The FDIC argues in favor of Virginia's longer contracts or injury to property statute of limitations. For actions based in contract, the statute of limitations is three years for oral contracts and five years for written contracts. Id. § 8.01-246. "Every action for injury to property ... shall be brought within five years after the cause of action accrues." Id. § 8.01-243(B).
 
 
 17
 The Virginia courts have not addressed directly which statute of limitations applies to a breach of fiduciary duty cause of action. Its courts, however, have refused to apply a contracts statute of limitations to a breach of duty action. See Winston v. Gordon, 115 Va. 899, 80 S.E. 756, 762 (1914). Eliminating the contracts statute of limitations provided by section 8.01-246, we still are faced with the decision whether the general one-year or the five-year tort statute of limitations is more appropriate.
 
 
 18
 The FDIC suggests that the five-year statute of limitations for actions alleging injury to property governs this case because its injury derives from the decline in the value of McLean resulting from the directors' and officers' breach of their duty. The Supreme Court of Virginia has not addressed this issue; however, by looking at the contexts in which the Supreme Court of Virginia has applied section 8.01-243(B), we logically can conclude that the Virginia court would not apply section 8.01-243(B) as the FDIC suggests.
 
 
 19
 The Virginia court has applied section 8.01-243(B) consistently to those cases that involve one party's actions directly against another party's property. See, e.g., Bader v. Central Fidelity Bank, 245 Va. 286, 427 S.E.2d 184, 187 (1993) (holding that section 8.01-243(B) applies to action for conversion of an instrument); Vines v. Branch, 244 Va. 185, 418 S.E.2d 890, 894 (1992) (holding that section 8.01-243(B) applies to action for damages resulting from continuous trespass to personal property); Eagles Court Condominium Unit Owners Ass'n v. Heatilator, Inc., 239 Va. 325, 329, 389 S.E.2d 304, 306 (1990) (holding that section 8.01-243(B) could apply to claim for damages resulting from an allegedly defective product); Hampton Rds. Sanitation Dist. v. McDonnell, 234 Va. 235, 239, 360 S.E.2d 841, 843 (1987) (holding that section 8.01-243(B) applies to action to recover for damage to property caused by sewer discharge); Lavery v. Automation Management Consultants, Inc., 234 Va. 145, 154, 360 S.E.2d 336, 342 (1987) (holding that section 8.01-243(B) applies to action seeking damages for unauthorized use of trade name). In summary, when a defendant's alleged conduct was directed at the plaintiff's property, and not at the plaintiff personally, the conduct constitutes an injury to property governed by section 8.01-243(B). See Vines, 244 Va. at 191, 418 S.E.2d at 894; Pigott v. Moran, 231 Va. 76, 80, 341 S.E.2d 179, 182 (1986).
 
 
 20
 In the instant case, the action involves the FDIC's allegations against McLean's directors that they breached a duty owed to McLean to act in its best interests. The FDIC's cause of action arises not merely because of a decline in McLean's property value; many prudent and well-reasoned actions by a corporation's board may cause immediate declines in share value or lead to the disposal of valuable assets. The FDIC maintains the breach of duty action because McLean's board has acted in a manner that purportedly personally wronged McLean; indeed, the availability of a breach of duty action derives from the personification of a corporation. Therefore, the one-year personal, not the five-year property, statute of limitations is most appropriate for a breach of duty cause of action, as the district court correctly decided.
 
 
 21
 Under section 8.01-248's one-year statute of limitations, the FDIC must have acquired its interest in the action within one year from the date the action accrued. If Virginia's statute of limitations runs before the FDIC gained its right to the action through receivership, then the FDIC gained a stale claim and may not pursue it. Although the district court held that the FDIC's claims became stale in just such fashion, the FDIC counters on appeal that the one-year statute of limitations should have been tolled under the doctrine of adverse domination.
 
 
 22
 Under the doctrine of adverse domination, a statute of limitations is tolled on an action against director/officer misconduct so long as a majority of the board is controlled by the alleged wrongdoers. The doctrine rests on the theory that if the wrongdoers "controlled the corporation through a majority of stock ownership and control of the directorate[,] there [would] consequently [be] no one to sue them." White v. FDIC, 122 F.2d 770, 775 (4th Cir.1941), cert. denied, 316 U.S. 672, 62 S.Ct. 1043, 86 L.Ed. 1747 (1942).
 
 
 23
 Virginia courts have not adopted the doctrine of adverse domination expressly. We, however, may be guided by another approach that Virginia takes to the tolling of a statute of limitations. A Virginia code provision details that
 
 
 24
 When the filing of an action is obstructed by a defendant's ... using any other direct or indirect means to obstruct the filing of an action, then the time that such obstruction has continued shall not be counted as any part of the period within which the action must be brought.
 
 
 25
 Va.Code Ann. § 8.01-229(D) (Michie Supp.1993). The Supreme Court of Virginia has supplemented this statutory provision by suggesting that the doctrine of equitable estoppel may preclude a defendant from raising expiration of the period of limitations as a defense. See, e.g., Wilson v. Butt, 168 Va. 259, 190 S.E. 260, 265 (1937); Sadler v. Marsden, 160 Va. 392, 168 S.E. 357, 360-61 (1933); City of Bedford v. James Leffel & Co., 558 F.2d 216, 217-18 (4th Cir.1977) (construing Virginia law).
 
 
 26
 Although equitable estoppel in Virginia generally does not require an intentional misrepresentation, e.g., T ... v. T ..., 216 Va. 867, 872-73, 224 S.E.2d 148, 152 (1976) (applying equitable estoppel to prevent the imposition of the statute of frauds), the Virginia Supreme Court has required intentional conduct to allow the doctrine to toll the running of a statute of limitations. The court held that
 
 
 27
 [c]onstructive fraud is not such as will toll the running of the statute of limitations. The character of fraud necessary to toll the statute must be of a variety involving moral turpitude. A defendant must intend to conceal the discovery of the cause of action by trick or artifice and must have thus actually concealed it from the plaintiff in order for the exception to apply.
 
 
 28
 Richmond Redev. & Hous. Auth. v. Laburnum Constr. Corp., 195 Va. 827, 840, 80 S.E.2d 574, 582 (1954); see also Hawks v. DeHart, 206 Va. 810, 814, 146 S.E.2d 187, 190 (1966).
 
 
 29
 Based on these provisions of Virginia statutory and case law, we hold that a statute of limitations is tolled until a person intentionally misled by a putative defendant could reasonably discover the wrongdoing and bring action to redress it. Therefore, we conclude that the district court erred by rejecting outright the application of a tolling mechanism to the facts of this case. Under Virginia's doctrine of equitable estoppel, however, the FDIC will have to do more than show that all of McLean directors were implicated in the wrongdoing, and that it was unable to sue until it became the corporation's receiver. The FDIC also will have to show that the directors concealed their wrongdoing from McLean, MFC, and their shareholders, the parties from whom the FDIC derived its interest in this lawsuit, during the period after the last act of alleged misconduct until the FDIC became receiver. It will be for the district court, on remand, to determine the extent to which equitable estoppel tolls Virginia's one-year statute of limitations.[6]
 
 III
 
 30
 The FDIC has included McLean's attorneys in its cause of action. On appeal, it asserts two errors in the district court's dismissal of the attorney defendants. First, the FDIC alleges that the district court applied the incorrect statute of limitations to its claims based on attorney malpractice. The district court applied the Virginia one-year statute of limitations to these claims. The Supreme Court of Virginia, however, has held that "actions for legal malpractice are governed by the limitations periods applicable to actions for breach of contract." See MacLellan v. Throckmorton, 235 Va. 341, 343, 367 S.E.2d 720, 721 (1988); Oleyar v. Kerr, 217 Va. 88, 90, 225 S.E.2d 398, 400 (1976). In this case either the three- or five-year contract statute of limitations will apply based on a finding as to whether the alleged malpractice was governed by a written or oral contract. To the extent that Harrison's alleged wrongdoing stems from his actions as a director, the one-year statute will apply; to the extent the allegations stem from his service as McLean's attorney, the longer statutory period will apply. The longer period also will apply to Light & Harrison, P.C.
 
 
 31
 Second, the FDIC alleges that the district court erred in suggesting that the FDIC's claims against Terry B. Light are derivative and therefore barred by the Virginia Code's Professional Corporations chapter. The FDIC's claim is without merit. Section 13.1-547[7] of the Professional Corporations chapter clearly maintains the traditional grounds for liability between a member of a professional corporation and her clients, while exculpating a member for the negligent activities of other members of the corporation. Va.Code Ann. § 13.1-547 (Michie 1989). Case law reinforces this concept; construing section 13.1-547, we have noted "that professionals practicing in a professional corporation enjoy limited personal liability for wrongful acts committed by their fellow professionals in the corporation." Bettius & Sanderson, P.C. v. National Union Fire Ins. Co., 839 F.2d 1009, 1013 (4th Cir.1988). Light will be liable to the FDIC only to the extent that he is responsible for Light & Harrison, P.C.'s share of the liability, if any. Light cannot be held personally liable if he was not personally responsible for any of the work done for McLean. Therefore, the district court's dismissal of Light on this alternate basis was correct.
 
 IV
 
 32
 Two defendants, John E. Harrison and Light & Harrison, P.C., made a motion to us to dismiss the FDIC's appeal as to them on the ground that they have been released from the cause of action. The FDIC released two other defendants, Thomas J. Leonard, III and Frank M. Howard, pursuant to settlement agreements that also released Leonard's and Howard's "heirs, assigns, successors, and any former or current agents, employees, servants, affiliates, attorneys and other representatives," from all claims which the FDIC "may now have, or may ever have had against [Leonard or Howard] for damages ... alleged to have been suffered or to be suffered by [McLean] or MFC ..." The release operates to relieve Harrison and Light & Harrison, P.C. of liability only as to advice and services rendered under the direct employ of Leonard or Howard. To the extent that the FDIC alleges liability against Harrison and Light & Harrison, P.C. based on their own relationships with McLean and not through the relationships of Leonard and Howard, Harrison and Light & Harrison, P.C. are not released. Therefore, we conclude dismissal would not be proper and so order.
 
 V
 
 33
 Julius F. Fogel raises the following issue unique to him. He asserts that the FDIC failed to comply with its tolling agreement with him by not bringing action against him on or before February 24, 1992. After reviewing the tolling agreement in question, the entries in the district court's docket, and the parties' briefs and arguments on this point, we conclude that Fogel should be dismissed on the basis of the FDIC's failure to comply with the tolling agreement.
 
 VI
 
 34
 In summary, we affirm the district court's decision to apply Virginia's one-year statute of limitations to the actions against Charles P. Cocke, Lloyd B. Ramsey, Preston L. Walker, Richard E. Blair, John E. Harn, II, and John E. Harrison, in his capacity as a director, but reverse the district court's determination outright that no tolling principle affects the running of that statutory period. We reverse the district court's application of a one-year statute of limitations to the actions against John E. Harrison in his capacity as McLean's attorney and against Light & Harrison, P.C., and we deny the motion to dismiss of Harrison and Light & Harrison, P.C. We affirm the dismissal of all proceedings against Julius F. Fogel and Terry B. Light. In so doing, we remand for further proceedings not inconsistent with this opinion.
 
 
 35
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 Because McLean was incorporated and operated under the laws of Virginia, the state's laws also govern the nature and viability of any tort actions against McLean directors or affiliates
 
 
 [2]
 Lloyd B. Ramsey was a director of McLean from 1977 to 1988 and Chairman of the Board of Directors from 1977 to 1986. Preston L. Walker was a director of McLean from 1977 to 1988, as well as a director of MFC from 1981 to 1987. Richard E. Blair served as a McLean director from 1977 to 1988 and as a MFC director from 1982 to 1987. John E. Harn, II was a director of McLean from 1980 to 1988 and a director of MFC from 1981 to 1987. Julius F. Fogel was a director of McLean from 1977 to 1987. Charles P. Cocke was a McLean director from 1977 to 1988 and a director of MFC from 1982 to 1987. John E. Harrison served as a director of McLean from 1977 to 1988 and Chairman of MFC's Board of Directors from 1982 to 1987. Harrison also was one of two principles in the law firm of Light & Harrison, P.C., which served as general counsel to both McLean and MFC from 1981 to 1987
 
 
 [3]
 On July 8, 1988, the Federal Savings & Loan Insurance Corporation ("FSLIC") was appointed as receiver. The FSLIC then took possession of all the assets and obligations of both McLean and its subsidiary MFC, including potential claims against former directors, officers, and attorneys. The FDIC became the successor-in-interest to these claims upon the dissolution of the FSLIC pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. § 1821a(a)
 
 
 [4]
 The last act of misconduct allegedly occurred in April 1987. The FDIC asserts generally that when the actions giving rise to its complaints occurred, McLean was dominated and controlled by its directors and officers, some of whom also controlled MFC
 
 
 [5]
 Howard and Frank were dismissed from this appeal on October 8, 1992 and are not party to the current proceedings. FDIC v. Ramsey, No. 92-1996, order at 2 (4th Cir. Oct. 8, 1992)
 
 
 [6]
 In addition to the issues concerning the Virginia statute of limitations discussed herein, the FDIC argued on appeal the timeliness of its action under the federal statute of limitations. Because the district court limited its rulings to the Virginia statute of limitations, any discussion we would offer on the federal statute of limitations would be advisory in nature. On remand, the district court will have an opportunity to apply the federal statute of limitations; therefore, we refrain from addressing the issue now, assured that, if need be, the district court's reasoned application of the law will provide us a more appropriate means of review
 
 
 [7]
 Section 13.1-547 states:
 The provisions of this chapter shall not be construed to alter or affect the professional relationship between a person furnishing professional services and a person receiving such service either with respect to liability arising out of such professional service or the confidential relationship between the person rendering the professional service and the person receiving such professional service, if any, and all such confidential relationships enjoyed under the laws of this Commonwealth, whether now in existence, or hereafter enacted, shall remain inviolate. A director, officer, agent or employee of a professional corporation shall not, by reason of being any director, officer, agent or employee of such corporation, be personally liable for any debts or claims against, or the acts or omissions of the corporation or of another director, officer, agent or employee of the corporation, but the corporation shall be liable for the acts or omissions of its director, officer, agents, employees and servants to the same extent to which any other corporation would be liable for the acts or omissions of its directors, officers, agents, employees and servants while they are engaged in carrying on the corporate business.
 Va.Code Ann. § 13.1-547 (Michie 1993).