Norman P. SINGER, Plaintiff–Appellee,

v.

Thomas F. DUNGAN; Benjamin Flammey; The Cambridge Institute, Incorporated, Defendants–Appellants.

No. 94–1467.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 3, 1994.

Decided Jan. 23, 1995.

**ARGUED:** Deborah Brand Baum, Shaw, Pittman, Potts & Trowbridge, Washington, DC, for appellants.   Edward C. Sussman, Washington, DC, for appellee.

Before RUSSELL, WILKINS, and HAMILTON, Circuit Judges.

Reversed by published opinion. Judge HAMILTON wrote the opinion, in which Judge RUSSELL and Judge WILKINS joined.

## OPINION

HAMILTON, Circuit Judge:

Norman Singer (Singer) instituted suit against Thomas Dungan (Dungan) and Benjamin Flammey (Flammey) for common law fraud and breach of fiduciary duty and against the Cambridge Institute (CI) (collectively, Appellants) for breach of contract. A jury returned a verdict in favor of Dungan and Flammey on the fraud claim, but in favor of Singer on the breach of fiduciary duty claim. The jury also found in favor of Singer on the breach of contract claim. We reverse and render judgment in favor of the Appellants.

### I.

Singer's profession was creating and conducting seminars for a seminar company. Dungan and Flammey wanted to start a seminar business and solicited Singer's help in order to start their own enterprise. Their efforts gave rise to CI, which was incorporated on December 31, 1984, under the following material terms: Dungan was to make an initial contribution of capital in return for sixty percent of CI's stock, and Flammey was to receive twenty-five percent of the stock from Dungan for being the bookkeeper. Singer, who could work only part-time initially, was to contribute his skills and receive fifteen percent of the stock, to be increased to twenty-five percent, the ten percent coming from Dungan's shares, when he started working for the company full-time. Singer was to contribute no capital, but material to his decision to join the enterprise was that Dungan should make a sufficient initial contribution of capital.

Singer was president of CI and developed and produced the seminars. Flammey was the bookkeeper, and Dungan had little involvement in daily affairs. All three men constituted the board of directors. Singer signed CI checks and was provided financial statements for review, but he did not monitor the financial condition of CI, nor did he prepare financial statements or tax returns. The record reveals that while Singer was not involved in preparing CI's financial records, he never believed that Dungan and Flammey tried to hide the records from him. Singer's tenure as president of CI was rocky; he admitted that he "resigned" several times, but that his "resignations" lasted anywhere from five minutes to a half a day, but he never missed work because of them.

Unlike Dungan and Flammey, Singer received a yearly salary of $48,000 for his part-time work. Additionally, even if Singer left CI, he was entitled to receive a payment of fifty percent of the "gross profits" of CI up through the date of his departure. If CI experienced "gross profits," then Singer's bonus would include any profits on the programs that had been planned, prepared, and scheduled prior to his departure. The term "gross profits" was defined in Singer's employment contract as "accrued revenue and accrued expenses for any given period of time and is a sum prior to payment of either Federal or State corporate income taxes, prior to Mr. Singer's earned profit allocation." (J.A. 831). Of the approximately 200 seminars conducted in 1989 and 1990, Singer prepared all but two. In 1989, Singer renewed his employment with CI.

Turning to CI's financial condition, during 1986 CI, being a relatively new corporation, made no money. By 1987, however, it began to show a profit, and Singer began teaching Dungan and Flammey the seminar business. Despite past prosperity, by March of 1989, CI was experiencing financial straits. On March 14, 1989, a board of directors meeting was called to resolve CI's financial problems: Singer, Dungan, and Flammey agreed that CI was having financial setbacks, but they could not agree on a solution to this problem. While Singer remained a director of CI, on March 17, 1989, Singer tendered his resignation as president of CI, and it became effective on May 31, 1989.

Meanwhile, CI continued to experience financial difficulty. Accordingly, Dungan and Flammey scheduled another board meeting for July 6, 1989. Singer was out of town, but was notified by Dungan that a meeting was

being convened. Dungan informed Singer that CI was "experiencing a severe hemorrhaging of capital," that it had sustained losses in May, and that losses were predicted for June. (J.A. 853). Dungan further stated that the directors needed to resolve CI's financial problems. Singer did not attend the July 6 meeting, claiming short notice, so it was convened without him. At the meeting, Flammey represented that CI had lost $45,000 since the end of 1988, that $180,000 of capital was required to keep CI afloat, and that the directors decided to raise these funds by offering for sale on a *pro rata* basis to existing stockholders (Singer, Dungan, and Flammey) additional stock at $10 per share. Thus, to achieve $180,000, 18,000 shares would have to be sold and issued. Each stockholder was given the option to maintain his percentage interest consistent with his existing rights. Dungan was offered 9,000 shares of which he purchased 4,000, and Flammey purchased all of the 4,500 shares offered to him.

Minutes of the July 6, 1989 meeting were sent to Singer by certified mail, along with the option to purchase the stock. Given the bleak financial picture that Dungan and Flammey presented of CI, Singer declined to purchase any stock and made his intentions known in a letter to Flammey dated July 18, 1989. Singer recognized that his equity ownership in CI would "ostensibly get[] reduced to just about zero" (J.A. 858) by virtue of the new stock issuance. Subsequently, in September or October of 1989, Singer discovered that Dungan and Flammey had purchased only $85,000 worth of stock. This discovery had two effects on Singer. First, he concluded that the financial health of CI was not as bleak as represented because it needed less capital than represented. Second, Singer's stock had been diluted from twenty-five percent to less than one percent because Singer did not partake in the issuance. Singer testified that had he known that only $85,000 had been put in the company, he might have contributed capital to ensure that his interest was maintained, explaining that if a substantially smaller sum of money was required to keep CI afloat, he might have reacted differently by investing money in the company and thereby have maintained his interest in CI.

Unhappy with this turn of events, Singer, on August 15, 1991, instituted suit against the Appellants, asserting three claims: (1) common law fraud against Dungan and Flammey; (2) breach of fiduciary duty against Dungan and Flammey; and (3) breach of contract against CI. The Appellants generally denied the substantive allegations in their answer; also, they generally raised the defense of the statute of limitations with respect to each claim in their answer.

Subsequently, the Appellants unsuccessfully moved to dismiss the complaint under Rule 12(b)(6) with respect to the fraud and breach of fiduciary duty claims. Next, the Appellants unsuccessfully moved to dismiss the fraud and breach of contract claims based on the statute of limitations. This second dismissal motion did not raise the issue of the statute of limitations defense with respect to the breach of fiduciary duty claim, but, as stated, this defense was generally raised as to all claims in the answer. The district court denied these motions, and the case proceeded to trial.

Regarding the breach of contract claim, at trial Singer attempted to introduce evidence explaining that the term "gross profits" had an industry definition that did not include overhead expenses. The district court excluded this proffered testimony because the term was defined clearly in the employment contract, but the district court permitted Singer to introduce testimony of financial experts for the limited purpose of revealing how accountants use the term "gross profits" in connection with stock-dilution claims based on a company's financial value. Singer's experts testified that CI's financial statements showed $145,000 available cash, but that this amount was subsequently reduced, that a transfer of $190,000 from CI to another company owned by Dungan did not appear on any of the financial statements provided by the Appellants, that CI's tax returns showed lower profitability than its financial statements, that CI had an estimated value of $600,000 to $1,000,000, and that Singer's twenty-five percent share of CI was estimated to be worth $250,000. The crux of Sing-

er's experts' testimony tended to show that CI was not in the financial straits that the Appellants represented based on their methods of calculation for valuation of stock dilution.

Conversely, the Appellants' evidence established that CI was in weak financial condition in 1989–90. For example, CI's tax returns and profit-and-loss statements demonstrated that CI suffered losses for 1989–90 and was operating at a loss. Specifically with respect to gross profits, the evidence established that there were no gross profits based on the definition of this term in Singer's employment agreement. According to the Appellants, "gross profits" as defined in Singer's employment agreement was a distinctly different concept from "gross profits" as that term is used in other accounting contexts.

Regarding the breach of fiduciary duty claim, Singer testified that Dungan tried to buy out Singer's stock in CI initially for $10,000 then $100,000, but nothing ever came of these proposals, and that later Dungan was glad that Singer did not accept his offer. Singer also testified that Dungan had not provided the initial capital, which Singer represented to be $200,000, although this figure was never memorialized by the parties, and that Dungan stated that he had no plans to contribute further capital. Singer testified further that while Dungan contributed $62,-000, Singer believed this money represented a loan from Dungan to CI; consequently, Singer told Flammey to repay it to Dungan. Singer also questioned the appraisals concerning CI. With respect to this claim, the parties agreed that a two-year limitations period applied to the fraud claim under Virginia law and that a similar limitations period was applicable to the fiduciary duty claim because these two claims were being asserted based on Dungan's and Flammey's alleged misrepresentations concerning CI's finances.

After Singer completed his case, the Appellants moved for judgment as a matter of law pursuant to Rule 50(a). First, the Appellants argued that the contract claim failed because Singer did not prove his damages. Second, the Appellants asserted that they had filed previously a dismissal motion con-

tending that the fraud and the breach of fiduciary duty claims were barred by the statute of limitations; however, as explained, the limitations defense was not specifically raised with respect to the breach of fiduciary duty claim in the dismissal motion, but it was raised with respect to all claims in the answer. The Appellants then argued the statute of limitations defense with respect to the fraud claim, but the district court stated "[f]orward it to the jury. You can make all these arguments to the jury." (J.A. 353). The Appellants then raised the breach of contract claim again, but the district court replied with respect to this claim, "I think there's enough evidence to go." *Id.* at 355. Given the district court's ruling that the case was going to the jury, the Appellants did not argue specifically that the breach of fiduciary duty claim was time-barred nor did they move for judgment as a matter of law at the close of all the evidence, but rather put on their defense. The jury returned a verdict in favor of Singer on the breach of fiduciary duty claim and assessed compensatory damages of $150,000 against Dungan and Flammey jointly and severally, and punitive damages against them severally of $50,000. The jury also found in favor of Singer on the breach of contract claim against CI and awarded damages of $60,000. The jury found in favor of Dungan and Flammey on the fraud claim.

Subsequently, the Appellants made a motion to set aside the verdict, contending that it was contrary to the law, the evidence, and excessive. The district court construed this motion as a renewed motion for judgment as a matter of law and denied it. Dungan and Flammey appeal the judgment in favor of Singer with respect to the breach of fiduciary duty claim and the award of punitive damages, and CI appeals the judgment in favor of Singer with respect to the breach of contract claim. Singer does not cross-appeal.

## II.

Judgment as a matter of law is proper "when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." 5A James W. Moore, *Moore's Federal Practice* ¶ 50.07[2], at 50–76 (2d ed. 1994).

The movant is entitled to judgment as a matter of law "if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof." *Bryan v. James E. Holmes Regional Medical Ctr.*, 33 F.3d 1318, 1333 (11th Cir.1994) (internal quotation marks omitted). While our review of this motion is plenary, it is also circumscribed because we must review the evidence in the light most favorable to Singer. *See Lama v. Borras*, 16 F.3d 473, 477 (1st Cir.1994).

### A.

In the district court, the parties did not dispute the applicable limitations period with respect to the fiduciary duty claim. Rather, the parties agreed that this claim was subject to a two-year statute of limitations under Virginia law. The district court, therefore, applied a two-year limitations period with respect to the fraud and breach of fiduciary duty claims. For the first time on appeal, however, the parties dispute the applicable statute of limitations for the breach of fiduciary duty claim. Analogyzing the dilution of his stock to injury to property, Singer asserts that the limitations period for this claim is five years, relying on section 8.01–243 B of the Code of Virginia, which provides that "[e]very action for injury to property ... shall be brought within five years after the cause of action accrues." Va.Code Ann. § 8.01–243 B (Michie 1992). Relying on the catchall provision of Virginia's statute of limitations law providing that "[e]very personal action, for which no limitation is otherwise prescribed, shall be brought within one year after the right to bring such action has accrued," *id.* § 8.01–248, the Appellants contend that a one-year limitations period applies to the breach of fiduciary duty claim because such a claim is not directed at the stock, but personally directed against Singer. The threshold issue that we must resolve, therefore, is determining the applicable limitations period, a legal conclusion that we review *de novo, see McCullough v. Branch Banking & Trust Co.*, 35 F.3d 127, 129 (4th Cir.1994).

### 1.

■ We have ruled repeatedly that under Virginia law a breach of fiduciary duty claim is subject to the one-year limitations period of section 8.01–248. *See RTC v. Everhart*, 37 F.3d 151, 155 (4th Cir.1994); *FDIC v. Cocke*, 7 F.3d 396, 401–02 (4th Cir.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 53, 130 L.Ed.2d 12 (1994); *LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n*, 830 F.2d 522, 527 (4th Cir.1987), *cert. denied*, 484 U.S. 1065, 108 S.Ct. 1027, 98 L.Ed.2d 991 (1988). In *Cocke*, we explained that a breach of fiduciary duty claim is personal in nature because it springs from the duty to deal honestly and fairly with fiduciaries. *Cocke*, 7 F.3d at 401–02. Accordingly, the *Cocke* court concluded that a one-year limitations period applied to a breach of fiduciary duty claim. *Id.* at 402. Similarly in *LaVay*, we expressly rejected the contention that the five-year limitations period applied to a breach of fiduciary duty claim based on injury to a partnership interest. *LaVay*, 830 F.2d at 527. Precedent compels us to hold that a one-year limitations period applies to the breach of fiduciary duty claim.

### 2.

■ Determining the applicable limitations period, however, does not end the inquiry because the parties are mired in a procedural morass into which they unfortunately dragged the district court. Here, the one-year limitations period is being raised for the first time on appeal.

Singer claims that we are barred from reviewing this claim, primarily on two grounds. First, he asserts that because the statute of limitations was not raised with respect to the breach of fiduciary duty claim in the district court, it cannot be raised on appeal. This assertion, however, has no merit because the Appellants raised the issue of the statute of limitations with respect to *each* claim in their answer. Second, he asserts that because the Appellants did not move for judgment as a matter of law at the close of the case, they cannot move for judgment as a matter of law after the verdict, and in any event, the Appellants' motion to set aside the verdict failed to constitute a motion for judgment as a matter of law. We have recognized, however, that we may consider an issue for the first time on appeal "if the error is 'plain' and if our refusal to consider such

would result in the denial of fundamental justice." *Stewart v. Hall*, 770 F.2d 1267, 1271 (4th Cir.1985). As the Fifth Circuit explained in an analogous situation, if a plaintiff failed to move for judgment as a matter of law at the close of the evidence and for judgment notwithstanding the verdict and then sought review of the merits on appeal through a motion for a new trial, the court would not review the merits *unless "plain error was committed,* which, if not noticed, would result in a 'manifest miscarriage of justice.'" *Coughlin v. Capitol Cement Co.,* 571 F.2d 290, 297 (5th Cir.1978) (quoting *American Lease Plans, Inc. v. Houghton Constr. Co.,* 492 F.2d 34, 35 (5th Cir.1974) (*per curiam*)) (emphasis added). We have recently noted that the federal courts recognize the precept that even in the wake of a complete failure to move for judgment as a matter of law, if plain error would result, appellate review is permissible. *See Bristol Steel & Iron Works, Inc. v. Bethlehem Steel Corp.,* 41 F.3d 182, 187 (4th Cir.1994). Plain error would result here if the evidence were not reviewed because the statute of limitations is one year, as we have consistently concluded. We find, therefore, that we may review this claim.

■ Applying the proper limitations period, we hold that the breach of fiduciary duty claim is barred by the statute of limitations. Singer knew as of September 1989 not only that the new stock was issued, but also how much the other directors had purchased and that they owned more than ninety-nine percent of CI's outstanding shares. Thus, by September 1989, at the latest,* Singer knew that he had a claim; however, he did not file suit until August 15, 1991. Clearly, this exceeds the one-year limitations period; therefore, Singer's breach of fiduciary duty claim is time-barred, and the judgment entered pursuant to it is reversed.

### B.

The jury awarded punitive damages to Singer of $50,000 against Dungan and Flammey severally on the breach of fiduciary duty claim. Dungan and Flammey contend that because the breach of fiduciary duty claim

cannot stand, the award of punitive damages likewise cannot stand. Because we conclude that the verdict with respect to the fiduciary duty claim must be reversed, the award of punitive damages must also be reversed. *See Stine v. Marathon Oil Co.,* 976 F.2d 254, 264 (5th Cir.1992); *LaVay,* 830 F.2d at 527.

### C.

■ We turn now to our review of the breach of contract claim. The Appellants moved for judgment as a matter of law under Rule 50(a) at the close of Singer's evidence, but did not renew their motion at the close of all of the evidence. After arguing that the breach of contract claim failed, the Appellants represented to the district court that they had also filed a motion for dismissal with respect to the fraud and breach of fiduciary duty claims based on the statute of limitations, but their dismissal motion only asserted the statute of limitations as a defense to the fraud claim, not the breach of fiduciary duty claim. The Appellants argued next that the fraud claim was barred by the statute of limitations, but the district court rejected this argument. The district court then stated, "I think there's enough to go to the jury. The motion for judgment as a matter of law will be denied." (J.A. 354). The Appellants then requested a ruling with respect to the breach of contract claim, but the district court stated with respect to this claim that "there's enough evidence to go," but noted that Singer would have difficulty in proving damages. (J.A. 355). Subsequently, the Appellants moved to set aside the verdict, a motion that the district court construed as a renewed motion for judgment as a matter of law. The threshold issue is whether we should review the breach of contract claim.

Despite the general rule that a Rule 50(a) motion at the close of all evidence is required to raise a Rule 50(b) motion, *see Moore's Federal Practice,* ¶ 50.08, at 50–83, various courts have taken an indulgent view as to what constitutes a sufficient predicate for a Rule 50(b) motion, *see, e.g., Tice v. Lampert Yards, Inc.,* 761 F.2d 1210, 1213 n. 3 (7th Cir.1985) (holding that a defendant's mistak-

---

* The Appellants offer earlier dates concerning Singer's knowledge. They state, however, that even by this date the claim is still time-barred.

enly making a Rule 41 dismissal motion was a sufficient predicate to a Rule 50(b) motion); *see also Trujillo v. Goodman,* 825 F.2d 1453, 1456 (10th Cir.1987) (noting that the trend in the case law is to adopt a liberal view of what constitutes a motion sufficient to preserve a party's rights under Rule 50(b) and although no Rule 50(a) motion was made at the close of all the evidence, the court considered the merits); *Ebker v. Tan Jay Int'l, Ltd.,* 739 F.2d 812, 823 (2d Cir.1984) (noting that several cases are departing from traditional Rule 50 analysis). Professor Moore states that:

> guided by the general principle that the Federal Rules are to be liberally construed, some courts have held that a motion for judgment under Rule 50(b) may be granted, despite the movant's failure to renew a previous motion under Rule 50(a) at the close of all the evidence, where the purposes of Rule 50 have been met in that both the adverse party and the court are aware that the movant continues to believe that the evidence presented does not present an issue for the jury.

*Moore's Federal Practice,* ¶ 50.08, at 50–91 (footnote omitted).

Professor Moore notes that the courts have created various exceptions to Rule 50(b) analysis for purposes of reviewing the sufficiency of the evidence by holding that a party can still make a Rule 50(b) motion despite his failure to renew his Rule 50(a) motion at the close of all evidence if: "(1) the court indicated that renewal of the motion was unnecessary and/or; (2) the evidence following the party's unrenewed motion under Rule 50(a) was either nonexistent or was brief enough to be obviously inconsequential on the issue of the evidence's legal sufficiency." *Id.* at 50–91—50–92 (footnote omitted). For example, in *Boynton v. TRW, Inc.,* 858 F.2d 1178 (6th Cir.1988) (*en banc*), the Sixth Circuit reviewed the sufficiency of the evidence even though the defendant did not make a Rule 50(a) motion at the close of all the evidence because the district court indicated that it was sending the case to the jury at the close of the plaintiff's case. *Id.* at 1186. *See also American Protein Corp. v. AB Volvo,* 844 F.2d 56, 61–62 (2d Cir.) (stating that a failure to renew a motion for judgment as a matter of law will not preclude review of the suffi-

ciency of the evidence if the trial court indicated that such a motion was not necessary to preserve the motion and if the nonmovant reasonably believed it could rest on its evidence), *cert. denied,* 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988); *Bohrer v. Hanes Corp.,* 715 F.2d 213, 217 (5th Cir.1983) (excusing the defendant's failure to comply with Rule 50(b) procedure given that the district court stated that it took the Rule 50(a) motion under advisement), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984).

Fourth Circuit precedent also has noted exceptions regarding Rule 50(b). For instance, in *Miller v. Premier Corp.,* 608 F.2d 973 (4th Cir.1979), while we observed that a proper Rule 50(a) motion was "not a mere technicality" but a prerequisite for a Rule 50(b) motion, *id.* at 979 n. 3, the *Miller* court nevertheless reviewed the sufficiency of the evidence, even though the appellant had not properly preserved the sufficiency issue. *Miller* concluded that review was proper because the record was "simply not that clear" as to which issues in which motion were actually raised. *Id.* Again, in *Federal Savings and Loan Insurance Corp. v. Reeves,* 816 F.2d 130 (4th Cir.1987), this court held that even though the defendant failed to raise an issue in his Rule 50(a) motion but then raised it in his Rule 50(b) motion, review of this issue was proper because the spirit behind Rule 50 was served in that the right to jury trial was not jeopardized and the opposing party had notice of the alleged error so as to cure any defect. *Id.* at 137–38.

Liberally construing the Appellants' motion to set aside the judgment and applying these principles, we conclude that we may review the breach of contract claim. Reviewing this claim, we conclude further that it must be reversed. The uncontroverted evidence established that CI was operating at a loss: the Appellants' financial statements established the absence of "gross profits" once direct and overhead expenses were deducted. There was simply no evidence of gross profits as defined under Singer's employment agreement; thus, there were no "gross profits" owed to Singer. The district court itself recognized Singer's plight in observing that the jury would have difficulty in calculating and awarding damages.

## III.

While we would normally remand, we reverse and render judgment here. *See Levin v. Mississippi River Fuel Corp.*, 386 U.S. 162, 170, 87 S.Ct. 927, 932, 17 L.Ed.2d 834 (1967); *National Conservative Political Action Comm. v. Federal Election Comm'n*, 626 F.2d 953, 958 n. 11 (D.C.Cir.1980). We hold that a one-year limitations period applies to the breach of fiduciary duty claim and that this claim is time-barred; accordingly, the judgment entered in favor of Singer pursuant to this claim is reversed, and we render judgment in favor of Dungan and Flammey. Likewise, we reverse the award of punitive damages. Finally, we reverse the judgment with respect to the breach of contract claim and render judgment in favor of CI.

*REVERSED.*